LOUISA P. BADER v. NEW AMSTERDAM CASUALTY COMPANY.[1]

September 20, 1907.

Nos. 15,143—(99).[2]

**Accident Insurance—Death by Shooting.**

A beneficiary in an accident policy sought to recover the full amount of insurance for loss of life by accident after the insured had been shot by a burglar and had died. Under a title "Special Indemnities" the policy provided that it did not exclude indemnity for loss by accident produced by shooting and other enumerated causes. Some of these causes were sports involving conscious participation on the part of the assured. Others excluded such participation. The policy also provided under this title that, in case of loss covered by this title, the company should pay one-half of the ordinary accident indemnity for such loss. It is *held* that the policy, construed as a whole, as favorably to the insured as reasonably may be without distorting the intended meaning of words, and with due reference to the rule "noscitur a sociis," entitled the beneficiary to recover only one-half, and not the whole amount, of ordinary accident indemnity.

Action in the district court for Hennepin county to recover $2,500 upon an accident insurance policy. The case was tried before Dickinson, J., who found in favor of plaintiff for the sum of $1,275. From an order denying a motion to amend the conclusions of law to correspond with the findings of fact and denying a new trial, plaintiff appealed. Affirmed.

[1] Reported in 112 N. W. 1065.          [2] April, 1907, term.

*Welch, Hayne & Hubachek,* for appellant.
*Buffington & Buffington,* for respondent.

JAGGARD, J.

On February 2, 1904, defendant and respondent casualty company, in consideration of a premium paid to it by Charles O. Bader, executed to him a policy of accident insurance for the term of one year. The beneficiary named therein was the plaintiff and appellant, the wife of the assured. The policy was subsequently renewed for another year. On December 23, 1905, Bader was shot by robbers at his place of business, was immediately taken to a hospital, and died within an hour from the effects of the wound. Due notice of loss and proofs of death were furnished. On refusal by the company to pay, this action was brought. Plaintiff sought to recover the full amount of insurance for loss of life by accident, $2,500, with interest. The answer of the company denied liability, and asked that the action be dismissed. On trial, the court ordered judgment in favor of plaintiff for one-half the principal sum, $1,275, with interest, in accordance with a contract provision hereinafter set forth in full. This appeal was taken from an order denying plaintiff's motion for a new trial and to modify the conclusions of law to correspond with the findings of fact.

The only question presented by this appeal is the construction of the following paragraph in the policy, viz.:

### Special Indemnities.

This policy does not exclude indemnity for loss by accident as herein provided, caused or contributed to, wholly or partly, directly or indirectly, by sunstroke, freezing, anæsthetics, gas, lockjaw, septicæmia, narcotics, poison, somnambulism, racing, shooting, intoxicants, asphyxiation, riot, polo playing, wrestling, strikes, steeplechasing, football playing, hydrophobia, riding to hounds, or by bite of animal; but in any such event the liability of the company shall be one-half of the amount of the ordinary accident indemnity specified for such loss.

A proper construction of the contract involves its examination as a whole. Thereby the defendant company agreed to pay certain indemnities under the following general co-ordinate and conspicuous

titles: "Ordinary Accident Indemnities;" "Surgical Indemnities;" "Illness and Disease Indemnities;" "Double Indemnities;" "Optional Indemnities;" "Special Indemnities." Indorsed on the policy also appear various provisions under the titles "Increased Indemnities" and "List of Operations, Amounts Payable in Addition to Weekly Indemnity." Under "Ordinary Accident Indemnities" appears: "(1) For loss of life by accident the full principal sum, $2,500.00." An accident is subsequently defined thus: " 'Loss of life by accident,' as used in this policy, shall be deemed to mean death from bodily injuries not intentionally inflicted by the assured, which independently of all other causes are effected solely and exclusively by external, violent, and accidental means, and which shall result in the death of the assured within ninety days of the event causing the injury." This clause, "Special Indemnities," is self-descriptive. The indemnity thereby referred to is "for loss by accident." That loss is caused, not "while," but "by," shooting, among other things. The natural construction of the clause is:

> This policy does not exclude indemnity for loss by accident as herein provided, caused or contributed to, wholly or partly, directly or indirectly, by * * * shooting; * * * but in any such event the liability of the company shall be one-half of the amount of the ordinary accident indemnity specified for such loss.

This apparent and normal construction of the controlling paragraph counsel for plaintiff insists is not the proper one on principle or on authority. The first of the two rules of construction which he invokes is the familiar and undisputed one that the terms of insurance policies should be interpreted in favor of the assured, particularly in cases of forfeiture of his interest. "It is a well-settled rule in the construction of insurance policies of this character, which the insured accepts for the purpose of covering all accidents, to construe all the language used to limit the liability of the company strictly against the company. Policies are drawn by the legal advisers of the company, who study with care the decisions of the courts, and with those in mind attempt to limit as narrowly as possible the scope of the insurance. It is only a fair rule, therefore, which courts have adopted, to

resolve any doubt or ambiguity in favor of the insured and against the insurer." Per Taft, J., in Manufacturers Acc. Ind. Co. v. Dorgan, 7 C. C. A. 592, 58 Fed. 945, 956, 22 L. R. A. 620. The decisions of this court are strictly in harmony with this elementary principle. Their unmistakable tendency is to make insurance mean insurance. This does not signify, however, that the terms of an insurance contract should be distorted from their natural meaning, or that the agreed liability of the insurer should be forced into one which only a new contract could have imposed, or that a court should indulge in the subtleties of the schoolmen to extend the plain rights of the insured. A construction as favorable as reasonably may be must be given, but only a natural and logical one, and not a strained or sophistical one. "The spirit of the common law is the instinct of practical sense." Philips, J., in Maryland Casualty Co. v. Finch, 77 C. C. A. 566, 147 Fed. 388, 397. A court must interpret such an insurance contract as it finds it, and has no power to add to it, or take from it. Language used by parties must be given its natural and ordinary meaning. Their words are to be taken in their popular sense, in the absence of anything showing a contrary intention. White v. Standard Life & Acc. Ins. Co., 95 Minn. 77, 103 N. W. 735; Nelson v. Traders, 181 N. Y. 472, 74 N. E. 421; Dunning v. Massachusetts, 99 Me. 390, 59 Atl. 535. A valuable collection of authorities on this subject will be found in 6 Current Law, 83, 84. The second rule of construction invoked by plaintiff, "Noscitur a sociis," is sanctioned by reason and adjudication.

Applying these rules to the case at bar, we agree with plaintiff that the paragraph here in issue should not be construed as defining risks which are ordinarily referred to in insurance law as "excepted risks." The title of the paragraph appropriately describes its provisions. They prescribe contract obligations in case of "special" as distinguished from "ordinary," "double," "increased," or other indemnities. The result is a limitation upon the amount paid in the special cases enumerated in the paragraph.

The question next arises whether the word "shooting," grouped with other words in the context, should be construed as a physical sport, or at least as a shooting in which the assured had in some way participated or to which he had consented. The paragraph in

question refers to some sports among which shooting could be included: Racing, polo playing, wrestling, steeplechasing, riding to the hounds. With respect to all of these, the basis of the insurance was some conscious participation of the assured. They were therefore, under the earlier forms of accident insurance, doubtful cases, or "cases on the border line." Loss by gas, narcotics, poison, or anæsthetics might be held to include both accidental and voluntary acts. It is to be noted, however, that these terms occur here without any of the qualifications customary under the earlier forms of accident insurance policies. Sunstroke, freezing, and septicæmia more clearly negative participation or consent on the part of the assured. We are wholly at a loss to see how it would be possible for somnambulism to involve conscious participation of the assured. The argument based on "noscitur a sociis," therefore, operates against the plaintiff. Loss by "shooting" is here conclusively a loss by accident. Plaintiff's contention would make that phrase, reading literally "loss caused by shooting," read: "Loss occurring while engaged in shooting as a sport." It would create two classes of indemnity for loss by shooting: A one-half indemnity for loss caused by shooting as a sport or the like, and a full indemnity for loss caused by shooting in other cases, for example, of murder. "Shooting a person" naturally means that a person "was hit by the substance with which the gun or pistol was loaded." Jarrell v. State, 58 Ind. 293, 295; Voght v. State, 145 Ind. 12, 43 N. E. 1049. It is an apt and current term for the description of such an offense as was here involved. The word "shoot" is synonymous with "kill," and is frequently, perhaps usually, employed in that sense. Lyon, C. J., in Winn v. State, 82 Wis. 571, 574, 52 N. W. 775. And see State v. Vaughn, 26 Mo. 29, 30; State v. Hammerli, 60 Kan. 860, 58 Pac. 559. The use of the term here included that sense.

Plaintiff's conclusion is not impossible, but paralogical. In effect it would make a new contract for the parties. To adopt it would merit Judge Sanborn's condemnation that the court would appear "to be cunning and astute to evade, rather than quick to perceive and diligent to apply, the meaning of the words it [the policy] contains in their plain, ordinary and popular sense." McGlother v. Provident Mut. Acc. Co., 32 C. C. A. 318, 321, 89 Fed. 685.

The authorities most nearly in point are in direct conflict. The opposite views and decisions will be found ably and exhaustively discussed in McGlother v. Provident Mut. Acc. Co., supra, in which Judge Sanborn wrote the opinion of the court and Judge Thayer the dissenting opinion, and in Fidelity & Casualty Co. v. Lowenstein, 97 Fed. 17, 38 C. C. A. 29, 46 L. R. A. 450, in which Judge Thayer wrote the majority, and Judge Sanborn the dissenting, opinion. The opinions of Judge Thayer sustain the plaintiff's contention and have been criticised as metaphysical. The opinions of Judge Sanborn sustain the defendant's contention and have been criticised as mathematical. The abstract merits of these judicial utterances we need not here discuss. Neither case controls the one at bar. Nor is it determined by other cases, not therein considered, which tend to support plaintiff's claim. Travelers v. Ayers, 217 Ill. 390, 75 N. E. 506, 2 L. R. A. (N. S.) 168; Omberg v. U. S., 101 Ky. 303, 40 S. W. 909, 72 Am. St. 413; Dezell v. Fidelity, 176 Mo. 253, 75 S. W. 1102; Button v. American, 92 Wis. 83, 65 N. W. 861, 53 Am. St. 900.

To a peculiar degree the controversies in all of these cases have waged around certain verbal phrases. The precise wording employed in the policy at bar has not been the subject of adjudication. It is, of course, wholly immaterial whether in one case the question concerned the word "poison" and that in the present case it concerns the word "shooting." The essential differences arise in part from the qualifications attached to particular words in most of plaintiff's cases which are not presented here, in part from the other words in immediate juxtaposition thereto, and largely from the title "Special Indemnities," which, as construed in connection with other co-ordinate titles in the same policy, is peculiar to the instance in dispute. Moreover, in most of plaintiff's cases the policies exclude indemnity for any of the specified items; and the courts held that, as to such matters as the insured did not voluntarily and consciously participate in, the loss was due to accident, and therefore not beyond the company's responsibility. Here, in any view, loss by shooting, however, is treated as an accident and paid.

In Preferred Accident v. Robinson, 45 Fla. 525, 33 South. 1005, 61 L. R. A. 145, 148, Taylor, C. J., referring to plaintiff's New York and other authorities, said: "Even if [these cases] were sound law,

the policy in litigation here seems to have been framed with a view to avoid the strained reasoning of the courts in those cases, predicated upon the use of certain words and forms of expression in the policies therein considered. The policy in this case differs materially from the contracts construed in those cases." This is true of the case at bar. By construing this contract as a whole, the conclusion is accordingly reached that it provides in plain language that, in case of loss by accident due to shooting, the liability of the company shall be one-half of the amount of the ordinary accident indemnity specified for such loss, and that therefore the ruling of the trial court was correct.

Order affirmed.