ROBERT G. HAUENSTEIN AND ANOTHER, COPARTNERS d.b.a. THE HAUENSTEIN COMPANY, v. ST. PAUL-MERCURY INDEMNITY COMPANY.[1]

June 11, 1954.

No. 36,285.

[1]Reported in 65 N. W. (2d) 122.

*Daniel S. Feidt* and *Robert I. Lang,* for appellant.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *D. W. Nord,* for respondent.

MATSON, JUSTICE.

Plaintiffs appeal from a declaratory judgment for the defendant.

Plaintiffs, as copartners doing business as The Hauenstein Company, were distributors of a new type of plaster known as Softone Acoustical Plaster. At all times herein plaintiffs were covered against liability for accidental property damage by an insurance contract with the defendant insurance company under which contract the defendant-insurer agreed:

"To PAY any loss by reason of the liability imposed by law or contract upon the Insured for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The policy also contained an exclusionary clause providing that:

"This Policy does not apply:

\* \* \* \* \*

"'* * * to injury to or destruction of * * * any goods or products manufactured, sold, handled or distributed by the Insured * * *.'"

While this policy was in effect plaintiffs sold the plaster to numerous persons including John Schold & Sons, Inc., a contractor, who used it on a construction job at St. Joseph's Hospital, Concordia, Kansas. After application, the plaster shrunk and cracked making it necessary for John Schold & Sons, Inc., to remove it and replaster the walls and ceilings. In May 1952 John Schold & Sons, Inc., commenced an action against plaintiffs for breach of warranty. Similar reports and claims have been made to the plaintiffs by other purchasers of the plaster.

The defendant-insurer has refused to assume any responsibility for the claims, and as a result plaintiffs commenced this action for a declaratory judgment to fix the defendant's liability for the claim made by John Schold & Sons, Inc., and to determine the defendant's liability on similar claims made by others. Plaintiffs appeal from a judgment for defendant.

We are concerned with the question whether the defendant-insurer, in view of the exclusionary clause in its contract, is liable for any injury to the plaster itself after its application to the building has disclosed its defective nature, and also the further question whether there is any liability for accidental damage to property within the meaning of the policy by reason of the application of such defective plaster to the walls and ceilings of a building.

Although the insurance policy specifically indemnifies the insured against loss resulting by reason of any liability imposed upon them by law or contract for damages *because of injury to property, including the loss of the use thereof, caused by accident,* the coverage thereby afforded is limited by the exclusionary clause which provides that the policy does not apply to *any goods or products manufactured, sold, handled, or distributed by the insured.*

No one can seriously doubt that the plaster before it was used or applied to a building was a product handled, sold, and distributed by the plaintiffs and therefore fell within the exclusionary clause so

that any damage from injury to the plaster itself prior to use would not be covered by the policy. Plaintiffs contend, however, that the plaster after it had been applied to the walls and ceilings of the building lost its identity as *goods and products* within the meaning of the exclusionary clause and that any damage to it in its applied condition is covered by the policy.

■ Plaintiffs' theory is that the plaster, after its application and use by the consumers, ceased to be goods or products and, by the law of accession, became a part of the realty. We cannot agree with this ingenious theory. The law of accession is important in controversies where the distinction between personalty and realty is vital, but it has no justifiable use as a vehicle for importing ambiguity into the language of an insurance contract where none otherwise exists. Although ambiguities in the wording of an insurance contract are to be construed in favor of the insured,[2] this rule of construction has no application whatever to language that is clear in its meaning.[3] Unless a contrary intention is shown, words used in an insurance contract are to be given the natural and ordinary meaning that they convey to the popular mind.[4] Clearly the exclusionary clause herein is applicable to plaster as a product handled by the plaintiffs without any limitation as to its changed condition by its regular and ordinary use.

■ The question remains, however, whether the use and application of the plaster by the consumer or his contractor has *accidentally* brought injury to property—including the loss of use thereof— whereby plaintiffs have incurred liability for damages. Aside from any injury to the plaster itself, was the building injured and damaged by its application? It is undisputed that after this new type

[2]Bader v. New Amsterdam Cas. Co. 102 Minn. 186, 112 N. W. 1065; Gershcow v. Homeland Ins. Co. 217 Minn. 568, 15 N. W. (2d) 88; Anderson v. Connecticut F. Ins. Co. 231 Minn. 469, 43 N. W. (2d) 807; Tomlyanovich v. Tomlyanovich, 239 Minn. 250, 58 N. W. (2d) 855; 9 Dunnell, Dig. (3 ed.) § 4659(16).

[3]See, Opten v. Prudential Ins. Co. 194 Minn. 580, 261 N. W. 197; 9 Dunnell, Dig. (3 ed.) § 4659.

[4]See cases under footnote 2 above; 9 Dunnell, Dig. (3 ed.) § 4659(10).

of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser.[5]

The principle involved here is illustrated by the Minnesota case of Heath v. Minneapolis, St. P. & S. S. M. Ry. Co. 126 Minn. 470, 148 N. W. 311, L. R. A. 1916E, 977; in which large quantities of sand were deposited on plaintiff's land. Plaintiff's property had not been intrinsically damaged, but the external deposit of sand impaired the value of the land as long as its presence remained. This, the court said, was property damage for which recovery could be had, to be measured by the diminution in value of the land, or by the loss of use plus the cost of removal of the sand, whichever was less.

■ There is no doubt that the property damage to the building caused by the application of the defective plaster was "caused by accident" within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned

---

[5]Heath v. Minneapolis, St. P. & S. S. M. Ry. Co. 126 Minn. 470, 148 N. W. 311, L. R. A. 1916E, 977; Hoffman v. Mill Creek Coal Co. 16 Pa. Super. 631; Houser v. Locust Mountain Coal Co. 5 Schuylkill Register 87 (Pa. County Court 1938). In accord but not touching upon damages for loss of use, see Zindell v. Central Mut. Ins. Co. 222 Wis. 575, 269 N. W. 327, 107 A. L. R. 1116; Union Course Holding Corp. v. Tomasetti Const. Co. 184 Misc. 382, 52 N. Y. S. (2d) 19.

happening or consequence from either a known or an unknown cause.[6]

Although there is no liability for damage to the plaster itself as a product handled and distributed by the plaintiff, the insurer is liable under its insurance contract for accidental damage to property caused by the application of the defective plaster.

The judgment of the trial court is reversed.

Reversed.

---

[6]See, Piotrowski v. Prudential Ins. Co. 141 Misc. 172, 252 N. Y. S. 313; Henderson v. Travelers Ins. Co. 262 Mass. 522, 160 N. E. 415, 56 A. L. R. 1088; Black, Law Dictionary (3 ed.) p. 23; 1 Wd. & Phr. (Perm. ed.) 293.