Rockingham
No. 6719

YVONNE MORRISSETTE

v.

PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY

June 28, 1974

*Shaines, Madrigan & McEachern* and *Sanford Roberts (Mr. Roberts* orally) for the plaintiff.

*Boynton, Waldron, Dill & Aeschliman (Mr. Nicholas Aeschliman* orally) for the defendant.

LAMPRON, J. Action by the beneficiary to recover death benefits under a group life insurance policy issued to her husband while he was employed by Deering-Milliken, Inc. in Exeter. Hearing before a Master *(Leonard C. Hardwick,* Esq.) resulted in certain findings and rulings and a recommendation of a verdict for the defendant. The master's report was approved by *Morris, J.,* who entered a verdict accordingly and reserved and transferred plaintiff's exceptions.

On November 18, 1966, while still employed by Milliken, the insured became totally physically disabled and terminated his employment with the insured group. His policy specifically provided that his insurance "shall terminate . . . (c) when active Employment of the employee with the Employer is terminated." The policy provided, however, that if an employee who is prevented from continuing his

employment because of total disability has not attained his sixtieth birthday and submits to the company proof of such' total disability, the company will endorse his certificate acknowledging the existence of this disability, "but only if such proof be received during the Employee's lifetime and within one year after termination of active employment." It is agreed that this required notice was given within the terms of the policy on October 11, 1967, and acknowledged by the company on October 31, 1967. Accordingly the company endorsed his certificate acknowledging the existence at that time of such disability.

The policy further provides, however, that after such endorsement if the insured "submits annually thereafter within three months prior to the anniversary of the original endorsement due proof that total disability has continued without interruption from the termination of his active employment and if death occurs during the continuance of such total disability, the Insurance Company will pay to the beneficiary of record the amount of Employee's life insurance in force at the time of termination of active employment." "No payment shall be made . . . if death occurs after recovery from total disability or after failure to submit due proof of total disability as above required."

The master properly found on the evidence that in its letter of October 31, 1967, the company advised the insured that annual proof of the disability was required and that the next proof would be due on July 19, 1968. The company also enclosed forms upon which the proof of such disability could be reported. "Again on July 26, 1968, by letter to the insured, he was advised by the defendant that the annual proof of disability was due." The master further found that: "Other than the report of October 11, 1967, up until the date of the insured's death [July 15, 1971] the defendant never received any further communication from either the insured or the plaintiff" who "during her husband's disability generally managed the affairs of her husband."

It is well recognized that the company could legally impose compliance with such conditions in order that the

policy continue in force instead of terminating when the employee ceased to be employed with the insured group. *Sanderson v. New York Life Ins. Co.,* 194 S.W.2d 221, 225 (Mo. 1946); *Garden v. New England Mut. Life Ins. Co.,* 218 Iowa 1094, 1107, 254 N.W. 287, 293 (1934); *see* RSA 408:16; *Rosenbaum v. New York Life Ins. Co.,* 47 N.Y.S.2d 255 (App. Div. 1944); 45 C.J.S. *Insurance* §§ 621 (5), 1064 (1946); 6 G. Couch, Insurance 2d § 32:35 (2d ed. 1961). These conditions are reasonably required to permit the company to review such cases periodically because of actuarial and other considerations which are determinative of the premium to be charged for such policies. J. Maclean, Life Insurance 228 (9th ed. 1962); *see Hargrave v. Fidelity Mut. Life Ins. Co.,* 196 Pa. Super. 627, 630, 175 A.2d 912, 913 (1962).

The conditions under which the policy of plaintiff's husband was to continue in force were clearly stated in the contract. "[I]t is equally important, to the insured as well as to the insurer, that the provisions of insurance policies which are clearly and definitely set forth in appropriate language and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations." *Williams v. Union Central Life Ins. Co.,* 291 U.S. 170, 180 (1933); *Sherman v. Metropolitan Life Ins. Co.,* 297 Mass. 330, 336, 8 N.E.2d 892, 895 (1937); *Opten v. Prudential Ins. Co. of America,* 194 Minn. 580, 585-86, 261 N.W. 197, 199-200 (1935). There was no evidence of insanity or mental incapacity which would have excused compliance with the terms of the policy. *Chagnon v. Insurance Co.,* 96 N.H. 256, 75 A.2d 167 (1950).

The master properly found and ruled that the "terms of the policy required annual notice of the continued disability as a condition precedent for payment of death benefits". He further found and ruled that there was a failure to comply with these provisions of the insurance contract and properly recommended a verdict for the defendant which was entered by the trial court.

*Judgment on the verdict.*

GRIMES, J., dissented; the others concurred.

GRIMES, J., dissenting: I would like to emphasize at the outset the master's finding not only that the defendant "was not prejudiced by failure of notice of continued disability" but that "even if the insured had fully complied with the provisions relative to proof of continuing disability, there was nothing that defendant could have done either to avoid or minimize liability for payment of the death benefit."

Not only was there a finding of no prejudice, but there was also a complete absence of any evidence from which prejudice could have been found. We are not dealing here with a waiver of premium case. There is not one speck of evidence that premiums were either waived or reduced or that the defendant's actuarial calculations, reserves or other interests were in the slightest degree compromised by the insured's failure to file the annual report that his disability, which was in fact permanent, was continuing.

I would also like to emphasize that this case does not involve a failure to file the initial proof of total disability. If it did, we would have a different case. Here the insured timely filed the initial proof of disability and this was acknowledged by the company.

The enforcement of the annual report provisions in fact amounts to a forfeiture under the facts of this case. Insurance contracts such as this are in effect contracts of adhesion. The insured has no opportunity to bargain freely as to the terms of the policy but is offered coverage on a "take it or leave it" basis. *Cooper v. Government Employees Ins. Co.,* 51 N.J. 86, 237 A.2d 870 (1968). It is therefore unfair to enforce these provisions strictly and unrealistically and allow the insurer to forfeit the coverage even though it is in no way prejudiced by the breach. I would hold that, with regard to the annual reporting provisions of this contract, the insurer may not forfeit the coverage unless it meets the burden of showing that it suffered prejudice sufficient to warrant the forfeiture. *Cooper v. Government Employees Ins. Co. supra; Pickering v. American Empl. Ins. Co.,* 109 R.I. 143, 282 A.2d 584 (1971).

In my opinion, it is wrong to emphasize delay as the controlling factor in this case. It is true that this court has adopted a three-factor test in determining whether the notice of accident requirements of an accident liability policy have been met. Under that test, in determining whether notice has been given within a reasonable time, consideration is given to the length of delay, the reasons for the delay, and the effect of the delay on the insurer. *Sutton Mut. Ins. Co. v. Notre Dame Arena, Inc.,* 108 N.H. 437, 237 A.2d 676 (1968); *Abington Mutual Fire Ins. Co. v. Drew,* 109 N.H. 464, 254 A.2d 829 (1969); *St. Paul Fire and Marine Ins. Co. v. Petzold,* 418 F.2d 303 (1st Cir. 1969). But in liability policies, notice is required as soon as practicable which has been construed to mean within a reasonable time after the accident. The purpose is to give the insurer an opportunity to investigate and prepare a defense. *Sutton Mut. Ins. Co. v. Notre Dame Arena Inc. supra.* By the very terms of a liability policy as well as the purposes to be served by the notice, the time of giving such notice is of importance and hence the length of delay weighs heavily on the question of prejudice and in the determination of whether notice was given within a reasonable time.

In the case at bar, however, the annual report requirement is not phrased in terms of a reasonable time from an event. Its purpose is not to give the company notice of an event within a reasonable time after its occurrence so it can investigate and prepare a defense, but rather is a requirement of an annual report on the continuance of a disability, the existence and totality of which, the company not only had notice but had acknowledged by its endorsement. In the case of the annual report requirement, delay does not weigh so heavily on, or automatically reflect, prejudice to the company as it does in the report of accident requirements.

Therefore, in a case like this, I would not allow delay in and of itself to effect a forfeiture of coverage. The master's finding is that, in spite of the delay, there was no prejudice. To hold that the company is relieved of liability in this situation is to uphold a needless and unjust forfeiture. *Albert v.*

414

*Mutual Beneficial Health & Acc. Ass'n,* 350 Pa. 268, 38 A.2d 321 (1944).