This is an appeal from a final decree rendered in a declaratory judgment action in the Circuit Court of Mobile County. The decree declared the appellant, Westchester Fire Insurance Company (Westchester), liable under a comprehensive catastrophe excess liability policy of insurance issued to appellee, Barnett Millworks, Inc. (Barnett).
On November 4, 1970, Barnett initially purchased its policy of insurance from Westchester. It was in full force and effect at all times relevant to this action. At the time this policy was purchased from Westchester, there was in effect an underlying general liability policy issued by The Travelers Insurance Companies to Barnett providing coverage up to $50,000 on products liability claims. Traveler's policy was also in effect at all times relevant to this lawsuit. *Page 1138 
Barnett was in the business of manufacturing, among other things, wood door units consisting of the wood door, jam, and trim; wood window units consisting of wood window, jam, and trim; and wood molding.
The primary purchasers of these products were retailers of building products and contractors engaged in construction work. During the year 1972, Barnett began receiving complaints regarding certain products it had sold. These claims hit their peak during the years 1973 and 1974, and continued to a limited extent into 1975 and 1976. The basis of the claims was the emergence of beetles from the wood products manufactured by Barnett, which had been integrated into residences and other buildings located primarily in Alabama, Florida and Mississippi. Approximately, 1,000 claims were involved. The beetles did not attack or damage any other part of the buildings into which the products were integrated.
As the number of claims increased substantially during 1972, Barnett Millworks, Inc., established its own work crew to examine and correct the damage as reported to it by the retailers and contractors who had purchased the products. This work crew would, with permission, remove the damaged product from the walls into which it had been integrated, clean the surrounding area, spray a material to destroy any live beetles or larvae, integrate a new product unit, and paint and restore the premises to a finished condition.
The claims against Barnett exceeded the underlying insurance coverage provided by Traveler's during the policy periods of November 2, 1972, to November 2, 1973 and November 2, 1973, to November 2, 1974. Barnett submitted the excess of these claims to Westchester as the excess liability carrier, in the amount of $90,651.52. Westchester denied liability on the basis of its interpretation of exclusion clauses contained in its policy; it refused to pay Barnett's claim.
The pertinent coverage and exclusions of the Westchester policy are as follows:
I COVERAGE —
 "The Company agrees to indemnify the insured for ultimate net loss in excess of the retained limit hereinafter stated, which the insured may sustain by reason of the liability imposed upon the insured by law, or assumed by the insured under contract: . . .
 (b) Property Damage Liability. For damages because of injury to or destruction of tangible property including consequential loss resulting therefrom, caused by an occurrence; . . .
* * * * * *
"EXCLUSIONS
"This policy shall not apply:
(a) . . .
 (b) under Coverage I (b), to injury to or destruction of (1) property owned by the insured or (2) any goods, products or containers thereof manufactured, sold, handled or distributed, or work completed by or for the insured, out of which the occurrence arises;
or (3) property rented to, occupied or used by or in the care, custody or control of the insured to the extent the insured is under contract to provide insurance therefor; . . .
 (g) under Coverage I (b), to claims made against the insured
 1. for repairing or replacing any defective product or products manufactured, sold or supplied by the insured or any defective part or parts thereof nor for the cost of such repair or replacement;
 2. for the loss or use of any such defective product or products or part or parts thereof;
 3. for improper or inadequate performance, design or specification; but nothing herein contained shall be construed to exclude claims made against the insured for personal injuries or property damage (other than damage to a product of the insured) resulting from improper or inadequate performance, design or specifications; . . . (Emphasis supplied.)
On October 14, 1975, Barnett initiated this action by filing a complaint in which it *Page 1139 
sought a declaratory judgment establishing Westchester's liability under the policy of insurance.
On November 23, 1976, Barnett filed a motion for summary judgment seeking:
 "[a] declaratory judgment that the Defendant is liable to the Plaintiff under the express provisions of its insurance policies issued to Plaintiff, with respect to products liability damages sustained by the Plaintiff in excess of $50,000 in any policy year, for the costs and expenses of removing Plaintiff's products from houses and other installations where installed together with the costs and expenses of installing the replacement product and correcting the damage to such houses and other installations, excluding therefrom only the cost of the replacement product itself."
The trial court, pursuant to Rule 56 (c), ARCP, granted a partial summary judgment, finding that Westchester was liable to Barnett under the terms of the policy. At a later date, after receiving testimony and other evidence, the court made a determination that the sum due to be recovered by Barnett was $90,561.52.
From this final judgment Westchester brings the present appeal.
Westchester, as appellant, notes that the evidence clearly shows that the infestation of this lyctus beetle[1] was confined to the banak[2] wood incorporated into the door and window units and molding, and that the damage did not extend to any other parts of the structures containing Barnett's products. It argues that for this reason the clear and unambiguous language of the exclusion exempts Westchester from liability on this claim since the expense incurred by Barnett was in replacing its defective products.
Appellee Barnett admits that Westchester is not liable for the cost of the replaced Millwork but argues that the policy covers its liability for damage to the structures into which its defective products were incorporated. It contends that there was damage to more than the unit itself since "when one product is integrated into a larger entity and the product proves defective, the damage is considered damage to the larger entity." The case of Hauenstein v. Saint Paul-Mercury Indem.Co., 242 Minn. 354, 65 N.W.2d 122 (1954) is cited for this proposition. In Hauenstein the Supreme Court of Minnesota was faced with a near analogous set of facts. There, Hauenstein Company manufactured and sold a new type of plaster. The plaster was sold to a contractor who used it on a construction job. The plaster proved defective and had to be removed and replaced. The contractor sued Hauenstein for breach of warranty and Hauenstein's insurer refused to assume liability for the claims. The Minnesota court noted:
 "At all times herein plaintiffs were covered against liability for accidental property damage by an insurance contract with the defendant insurance company under which contract the defendant-insurer agreed:
 "`TO PAY any loss by reason of the liability imposed by law or contract upon the Insured for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.'
 "The policy also contained an exclusionary clause providing that:
"`This Policy does not apply:
* * * * * *
 ". . . to injury to or destruction of . . . any goods or products manufactured, sold, handled or distributed by the Insured. . . .;'"
242 Minn. at 355-56, 65 N.W.2d at 124.
In concluding that the insurer was liable under its insurance contract for accidental damage to property caused by the application of the defective plaster, the Court reasoned: *Page 1140 
 "Aside from any injury to the plaster itself, was the building injured and damaged by its application? It is undisputed that after this new type of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage. The measure of damages is the diminution in the market value of the building, or the cost of removing the defective plaster and restoring the building to its former condition plus any loss from deprival of use, whichever is the lesser." (Emphasis supplied.) 242 Minn. at 357-58, 65 N.W.2d at 125.
See also Geddes Smith, Inc. v. Saint Paul Mercury IndemnityCo., 51 Cal.2d 558, 334 P.2d 881 (1959), on remand 63 Cal.2d 602,47 Cal.Rptr. 564, 407 P.2d 868 (1965).
Hauenstein and Geddes Smith would be persuasive to our court but for a single important distinguishing factor — the difference in the wording of the exclusionary clauses. The clause in the policy before us contains language not found in the policies considered in the above cited cases. The Westchester policy states:
 "This policy shall not apply . . . to claims made against the insured (1) for repairing or replacing
any defective product or products manufactured, sold or supplied by the insured . . . nor for the cost of such repair or replacement."
We are fully aware of the rules of construction that exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage for the insured,Georgia Cas. Sur. Co. v. University Underwriters Ins.,534 F.2d 1108 (5th Cir. 1976), and that such clauses must be construed most strongly against the company that drew the policy and issued it. American Liberty Ins. Co. v. Soules,288 Ala. 163, 258 So.2d 872, (1972). However, we are equally aware that the courts must enforce insurance contracts as written and cannot defeat express provisions in a policy, including exclusions, by judicial interpretation. Aetna Ins. Co. v. PeteWilson Roofing Heat. Co., 289 Ala. 719, 272 So.2d 232 (1972) and cases cited therein.
Had the exclusion clause before us not contained the reference to "repairing and replacing" we would feel compelled to follow the reasoning of Hauenstein, supra, but the language in the policy here is clear and unambiguous, and may have been added to avoid a result as was reached in Hauenstein.
For the above reasons we conclude that the trial court erred in finding the appellant, Westchester Fire Insurance Company liable under its policy of insurance issued to the appellee Barnett Millworks, Inc.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] Powder post beetle, of the family lyctidae, having larvae which feed in very dry wood or lumber, reducing the interior to powder.
[2] Any of several central American timber trees especially shipped from Belize.