(1968)

---

**MARYLAND CASUALTY COMPANY,**
Plaintiff,

v.

**STEVENS INDUSTRIES, INC.,**
Defendant.

Civ. A. No. 586.

United States District Court
M. D. Georgia,
Americus Division.

Dec. 15, 1966.

---

Burt & Burt and Donald D. Rentz, Albany, Ga., for plaintiff.

Perry, Walters, Langstaff & Lippitt, Albany, Ga., Thomas E. Joiner, of Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., and Frank C. Vann, Camilla, Ga., for defendants.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGENT

ELLIOTT, District Judge.

This is an action for declaratory judgment brought pursuant to the provisions of 28 U.S.C. § 2201. Defendant by way of counterclaim also seeks declaratory judgment. There appears to be no issue concerning any material fact appropriate for consideration in determining the basic issue involved in this case. There is controversy concerning material facts relating to secondary issues, but because of the direction which will be given the matter the controversy concerning secondary issues is unimportant at this stage.

Plaintiff issued to Defendant its comprehensive liability insurance policy which was in force and effect from July 1, 1964 until July 1, 1965. Various types of coverage were provided under the terms of this policy and under "coverage C" entitled "Property Damage Liability—Except Automobile" Plaintiff is obligated:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Under the terms of the policy Plaintiff also agreed to defend any suit brought against the insured (Stevens Industries, Inc.) alleging liability against the latter which is covered under the policy.

The above quoted provision of the policy is followed by certain Exclusions and Definitions. Exclusion (a) of the policy provides:

"This policy does not apply:

"(a) to liability assumed by the insured under any contract or agreement except under coverages A and C, (1) a contract as defined herein or (2) as respects the insurance which is afforded by the Products Hazard as defined, a warranty of goods or products;"

In the *definitions* section of the policy it is provided that:

"The word 'contract' means, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack easement, or elevator or escalator maintenance agreement."

and "Products Hazard" is defined in the policy as follows:

"The term 'products hazard' means

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (a) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, including any act or omission in connection with operations performed by or on behalf of the named insured on the premises or elsewhere, whether or not goods or products are involved in such operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations

may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this paragraph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (a) of the declarations specifically includes completed operations."

One of the businesses operated by the Defendant which was covered by the terms of this policy was that of processing peanuts for seed purposes and the subsequent sale of such peanuts so processed to farmers and retail seed dealers in a large area in southwest Georgia. During the early months of the year 1965 the Defendant processed large quantities of such peanuts and sold them to purchasers as indicated. In the processing of the peanuts the nuts are removed from the hulls and are treated with a mercury compound, the purpose of the treatment being to enhance productivity. During the processing operation at the Defendant's plant the peanuts were accidentally subjected to an overtreatment with this chemical, which overtreatment rendered large quantities of the seed peanuts defective. Being unaware of this mistake, the Defendant sold and delivered and its purchasers bought and received large quantities of seed peanuts which were defective in varying degrees in that they failed to germinate at all in some cases, and failed to germinate in expected quantities in other cases, and, in still other cases, having germinated, failed to produce expected crop yields. The result has been that large numbers of farmers and retail dealers have asserted claims against the Defendant and the Defendant has called upon the Plaintiff to defend, settle and satisfy the claims upon the theory that any liability of the Defendant with respect to these claims is covered by the liability insurance policy.

The Plaintiff has denied that the policy covers the Defendant's liability upon the claims, contending that the Plaintiff would not be liable to pay any judgment which was obtained against the Defendants by the claimants, and further, that since there is no coverage under the policy with respect to said claims that it does not owe any duty to the Defendant to defend against them. The Plaintiff urges that it is entitled to have this Court declare whether or not coverage of the claims is afforded to the Defendant under the terms of the policy and whether or not the Plaintiff owes any duty to defend against said claims, and to declare what the rights of the parties are under the insurance policy, and to this end the Plaintiff seeks a declaratory judgment.

On the other hand, the Defendant contends in its counterclaim that any liability of the Defendant by reason of the deficiencies in the seed peanuts is within the coverage of the aforesaid policy issued by the Plaintiff to the Defendant and alleges that it has demanded that the Plaintiff defend, settle, or satisfy all of such claims in accordance with the terms of the policy, and that the Plaintiff has refused the Defendant's demands, and that the defense of the numerous claims made upon the Defendant would be expensive and would extend over a long period of time and would result in a multiplicity of suits, and that the Defendant has fully performed and complied with all of the terms and conditions of the policy, and that the Defendant is entitled to a declaratory judgment determining that the claims of the farmers and retail seed dealers above referred to are within the coverage of the liability policy, and that the Plaintiff is liable to pay all judgments obtained against the Defendant by reason of said claims up to the limits of liability specified in the policy, and that the Plaintiff is obligated to defend, settle, or satisfy all claims against the Defendant arising out of the allegedly defective peanut seeds sold by it, and that the Plaintiff is liable to compensate Defendant for all compromises of said

claims by the Defendant, together with expenses and attorney's fees.[1]

Plaintiff and Defendant have each filed motions for summary judgment and have supported their motions with affidavits and briefs and the Court has given careful consideration to all materials submitted.

It is clear from a reading of the provisions of the insurance policy that for the insured to prevail it must appear that there was an accident after the seed peanuts were delivered to the purchasers and that that accident resulted in property damage. It is also clear that there was an accident which occurred involving the peanuts during the processing operation, but this occurred while the product was still in the possession of the insured, and all agree that that, standing alone, cannot be the basis of liability. The Defendant contends, however, that there was another accident, this being the failure of the seeds to germinate properly after they had come into the possession of the purchasers and that this "accident" resulted in property damage to the purchasers. The Plaintiff contends that the only accident involved was the one which occurred at the plant of the insured during processing and that the failure of the seeds to germinate was not an "accident" as contemplated by the terms of the policy, and further, that even if the failure of germination was an accident, it did not result in property damage to the purchasers.

This is a novel situation. Counsel for neither Plaintiff nor Defendant have called the Court's attention to any reported case involving similar facts and the Court's research has uncovered none.

We first consider whether the failure of the seeds to germinate properly was an "accident".

The word "accident" is derived from the Latin verb "accidere", meaning "to fall", or "to fall in", or "to fall upon", or "to befall", or "to happen". It will be noted, therefore, that the word "accident" is a word of *action*. It is a word of movement, of change, and it is difficult to conceive of a thing being the same after an accident as before the accident, which is simply another way of saying that the word "accident" connotes something affirmative—not negative, something active—not passive. In this connection it is noted that it is not something that these seeds *did* that is complained of, it is something that they *did not do*. As we see it, the failure of the seeds to germinate was not an accident within itself, it was simply the *result* of an accident which occurred at the processing plant. The failure was not itself an accident, although the result was obviously unexpected. True, the accident at the processing plant resulted in later loss, but we do not regard the words "accident" and "loss" as synonymous.

Analogizing, let us suppose that an optometrist sets out to prepare a pair of contact lenses pursuant to prescription with intention to correct certain eye deficiencies and in grinding the lenses he accidentally uses an incorrect formula, so that when the lenses are delivered to the patient they are deficient in that they do not make adequate correction. Certainly there was an accident at the time the lenses were ground, but can it reasonably be said that there was another accident when the patient inserted the lenses without getting the expected result? We think not, because *nothing happened*. There was simply a failure to achieve the desired and expected result. On the other hand, if, because of accidental procedures the optometrist improperly ground the lenses so as to leave sharp edges which caused painful cuts or scratches under the eyelid when inserted, then there would be two accidents, one when the lenses were ground, and another when the patient used them, because in this instance the patient was cut

---

[1]. A large number of claims have been filed with the Defendant and others are anticipated. At least one damage suit against the Defendant is pending and the filing of others is imminent. Since the Plaintiff has declined to recognize coverage the Defendant has negotiated settlement of some claims.

and scratched—something *happened*. There was *action*. There was an accident.

Further, if we would relate the thought to tangible property, let us suppose a housewife buys a machine to clean her floors and when she plugs it in the electrical outlet nothing happens—it does not operate as anticipated because of some accident in manufacture at the plant where the apparatus was made. Can it be said that the failure of the machine to operate is an accident? We think not.[2] Or, let us suppose that the machine operated but only at about 50% efficiency. Still there has been no accident—there has simply been a failure to produce to the degree expected.[3] On the other hand, if, when she plugs the machine in and moves it across the floor it makes cuts and scratches on the floor, then there have been two accidents, one at the manufacturing plant when the machine was made and another at the time she used it, because something *happened*. The machine didn't just fail to operate, or, operating, fail in efficiency. There was action resulting in damage. It didn't just *fail* to do the job expected, it did something else which damaged the realty.

In the excellent briefs filed by Counsel for the Defendant in this case our attention has been called to some cases decided in other jurisdictions involving an interpretation of language similar to that found in this policy of insurance with which we are here concerned, in which cases the courts have held that under the circumstances of those cases there was an accident, and by reference to these cases Counsel seek to persuade us that there was an accident here. The cases referred to are Bowman Steel Corporation, etc. v. Lumbermens Mutual Casualty Company, 364 F.2d 246 (3 Cir. 1966); Pittsburgh Plate Glass Company v. Fidelity and Casualty Company of New York, 281 F.2d 538 (3 Cir. 1960); Bundy Tubing Company v. Royal Indemnity Company, 298 F.2d 151 (6 Cir. 1962); Hauenstein v. St. Paul-Mercury

Indemnity Company, 242 Minn. 354, 65 N.W.2d 122 (1954); and Dakota Block Company v. Western Casualty and Surety Company, 81 S.D. 213, 132 N.W.2d 826 (1965). We have carefully reviewed these cases and we are impressed that in each of them something affirmative *happened*. There was motion or there was change and the happening resulted in observable property damage. In *Bowman* the asbestos felt *separated* from the steel sheets to which it had been laminated, exposing the steel to the elements and damaging the property. In *Pittsburgh* the paint *peeled off*, causing the jalousies to rust and deteriorate. In *Bundy* the water pipes *burst*, causing leakage and damage to the structure in which the pipes were used. In *Hauenstein* the plaster *shrunk* and *cracked*, causing damage to the structure. In *Dakota* the blocks *cracked* and *changed color*, causing damage to the realty. In each of these cases it is understandable how the Court could conclude that there had been an accident after the product had been delivered to the purchaser, and in this case if the planting of these peanut seed which had been overtreated with a chemical had brought about chemical change in the farmer's soil making the soil unfit for the growth of vegetation, we would consider that the cases cited by Counsel were persuasive and we would conclude that there had been an "accident", but when the only contention made is that the seeds have simply failed to germinate and produce as anticipated, we conclude that there has been none.

■ Courts have no more right by strained construction to make an insurance policy more beneficial by extending the coverage contracted for than they would have to increase the amount of the insurance. The insurance here is not simply against the results of *any* accident, but only against the results of an accident which occurs after possession of the product had been relinquished to others by the insured. If the purchaser's loss is solely the result of the accident.

---

2. Some of the defective seed involved in this case did not germinate.

3. Some of the defective seed germinated but did not produce an adequate crop.

which occurred during the processing operation, as we believe it to be, then the policy does not cover the case.

Having concluded that there was no accident as contemplated by the terms of the policy, we do not reach the question whether the failure of the seed to germinate properly resulted in property damage.

Accordingly, Plaintiff's motion for summary judgment will be granted and Defendant's motion for summary judgment will be denied. Counsel for Plaintiff will submit a suggested form of judgment to be entered.