**STEVENS INDUSTRIES, INC.,**
Appellant,

v.

**MARYLAND CASUALTY COMPANY,**
Appellee.

No. 24439.

United States Court of Appeals
Fifth Circuit.

Feb. 7, 1968.

Certiorari Denied June 17, 1968.
See 88 S.Ct. 2285.

A. G. Cleveland, Jr., Atlanta, Ga., Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., Perry, Walters, Langstaff & Lippitt, Albany, Ga., of counsel.

Thomas E. Joiner, Atlanta, Ga., Robert B. Langstaff, Albany, Ga., Emmet J. Bondurant, II, Atlanta, Ga., for appellant.

H. P. Burt, D. D. Rentz, Burt & Burt, Donald D. Rentz, Albany, Ga., for appellee.

Before TUTTLE, GEWIN and AINSWORTH, Circuit Judges.

GEWIN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Middle District of Georgia, 279 F.Supp. 681, granting a motion for summary judgment in favor of Maryland Casualty Company (Maryland) in a declaratory judgment action brought by it as the comprehensive liability insurer of Stevens Industries, Inc. (Stevens). Stevens also sought declaratory judgment by means of counterclaim. The court held that Maryland was not liable to defend or pay judgments resulting from claims asserted by farmers against Stevens, arising out of the sale of defective peanut seeds. From this judgment Stevens has appealed.

The question we must decide is whether under the terms of the insurance contract there was coverage. We conclude that the district court correctly found there was not, and affirm.

Stevens is a Georgia corporation engaged in the business of the manufacture, sale, and processing of agricultural products, including the processing and sale of peanuts for use as seed by farmers and dealers in southwest Georgia.[1] As a part of its processing procedure the peanuts are removed from their shells and treated with a mercury compound in order to enhance productivity. During the period of approximately March to May of 1965, Stevens accidentally overtreated the seed peanuts. Without realizing the mistake, the seeds were then sold to various dealers and farmers. As a result numerous claims for damages have been made by the purchasers who contend that the excess application of the mercury compound caused the seeds to be defective in that some failed to germinate at all, while others reacted in various ways as follows: germinated but soon died; germinated, lived, but failed to produce; or germinated, lived, bore, but produced in less than expected quantities. At the time Maryland filed its suit for declaratory judgment only one suit had actually been filed against Stevens, but many others were threatened and imminent. Some of the farmers' claims for damages were based on the contention that the crop yield would have been greater if the seed had not been defective. Other claimants contended that they suffered a reduction in yield below

1. The total seed sales of defendant for the crop year 1965 amounted to $635,154.69.

an "average yield" or that their crop yield was substandard. In some instances it was asserted that the seed germinated but the plants failed to produce and died. The damages claimed also included such items as plowing expenses, cost of insecticides, fertilizers, land preparation, replacement seed and land rental charges. Many of these claims were settled by Stevens prior to its notification of Maryland on July 5, 1965. The facts with respect to the nature of the claims, the settlements effected and the contentions of the parties were fully developed.

Maryland had issued a comprehensive liability policy to Stevens on July 1, 1964, which was in effect throughout the period in question. Maryland received a specific premium of $71.00 in return for providing protection under Coverage C of the policy, entitled "Property Damage Liability—Except Automobile." This clause obligated Maryland "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, *caused by accident.*" (Emphasis supplied). In addition, Maryland also agreed to defend any action brought against Stevens alleging liability covered under the policy. Exclusion (A) of the policy provided:

> "This policy does not apply: (A) to liability assumed by the insured under any contract or agreement except under coverages A & C, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products;"

In the definition section of the policy, the word "contract" is defined as follows: "The word 'contract' means, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, side-track agreement, or elevator or escalator maintenance agreement." In addition, "Products Hazard" is defined as "(1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and *if such accident occurs away from premises owned, rented, or controlled by the name insured* or on premises for which the classification stated in Division (a) of the declarations excludes any part of the foregoing." (Emphasis added.)

Both parties agree that Maryland is not liable under the terms of the policy for the accident which occurred within Steven's own plant resulting from the overtreatment with the mercury compound. The disagreement occurs over whether or not there was a second accident which occurred after the seeds left the plant. Stevens contends that a second accident occurred when the excess mercury compound unexpectedly prevented some seeds from germinating and others from fully developing into mature plants. Maryland contends that the only accident in this case occurred within Stevens' own plant and that even if there were a second accident, there was no requisite "injury to property". Both parties filed motions for summary judgment, supported with affidavits and briefs. The district court, after a careful consideration of all materials submitted, found that there was no second accident occurring after the seed peanuts left the plant. The issue of whether there was an injury to property was therefore never reached.

Jurisdiction in this case is based upon diversity of citizenship and thus Georgia law is controlling. Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, despite diligent search by the able counsel for both sides, neither has been able to point to any Georgia law directly in point under the facts presented here. Nor has our independent research revealed any. We therefore occupy the position of deciding this case as the Georgia courts would decide it if confronted with these facts. Birkett L. Williams Company v. Smith, 353 F.2d 60

(5 Cir. 1965); United States Fidelity & Guaranty Co. v. Anderson Construction Company, 260 F.2d 172 (9 Cir. 1958). Certain general principles of Georgia contract law are clear. Contracts of insurance, being contracts of adhesion drawn by the legal draftsmen of the insurer are to be "construed as reasonably understood by the insured." Loftin v. United States Fire Insurance Company, 106 Ga.App. 287, 127 S.E.2d 53 (1962). Insurance policies are to be interpreted liberally in favor of coverage of the insured. Johnson v. Mutual Life Insurance Company, 154 Ga. 653, 115 S.E. 14 (1922). When the insurer relies on an exclusionary clause of the policy it has the burden of proving that the facts upon which the asserted claim is based came within the exclusion. State Mutual Life Assurance Co. v. Dorsey, 357 F.2d 600 (5 Cir. 1966), Darby v. Interstate Life & Accident Insurance Co., 107 Ga. App. 409, 130 S.E.2d 360 (1963). Nevertheless, where the terms and conditions of the policy are clear and unambiguous, the court must declare and enforce the contract as made between the parties. Nelson v. Southern Guaranty Insurance Company, 221 Ga. 804, 147 S.E.2d 424 (1966), Andrews v. Georgia Mutual Insurance Company, 110 Ga.App. 92, 137 S.E.2d 746 (1964).

■ The district court based its finding that the failure of the seeds to properly germinate and produce did not constitute a distinct accident within the meaning of the policy on the rationale that the word "accident" is a term "of movement, of change * * * something affirmative—not negative, something active—not passive.[2] The cases [3] by which counsel for Stevens attempted to persuade the court below that a second accident did occur within the meaning of similar policies and under similar circumstances were distinguished by the trial judge on the basis that "in each of them something affirmative happened. There was motion or there was change and the happening resulted in observable property damage." For example, in the

---

2. On this aspect of the case the district court concluded as follows:

   "The word 'accident' is derived from the Latin verb 'accidere', meaning 'to fall', or 'to fall in', or 'to fall upon', or 'to befall', or 'to happen'. It will be noted, therefore, that the word 'accident' is a word of *action*. It is a word of movement, of change, and it is difficult to conceive of a thing being the same after an accident as before the accident, which is simply another way of saying that the word 'accident' connotes something affirmative—not negative, something active—not passive. In this connection it is noted that it is not something that these seeds *did* that is complained of, it is something that they *did not do*. As we see it, the failure of the seeds to germinate was not an accident within itself, it was simply the *result* of an accident which occurred at the processing plant. The failure was not itself an accident, although the result was obviously unexpected. · True, the accident at the processing plant resulted in later loss, but we do not regard the words 'accident' and 'loss' as synonymous."

   \* \* \* \* \*

   "\* \* \* in this case if the planting of these peanut seed which had been overtreated with a chemical had brought about chemical change in the farmer's soil making the soil unfit for the growth of vegetation, we would consider that the cases cited by Counsel were persuasive and we would conclude that there has been an 'accident', but when the only contention made is that the seeds have simply failed to germinate and produce as anticipated, we conclude that there has been none."

3. Bowman Steel Corporation v. Lumbermens Mutual Casualty Company, 364 F. 2d 246 (3 Cir. 1966); Pittsburgh Plate Glass Company v. Fidelity and Casualty Company of New York, 281 F.2d 538 (3 Cir. 1960); Bundy Tubing Company v. Royal Indemnity Company, 298 F.2d 151 (6 Cir. 1962); Hauenstein v. St. Paul-Mercury Indemnity Company, 242 Minn. 354, 65 N.W.2d 122 (1954); and Dakota Block Company v. Western Casualty and Surety Company, 81 S.D. 213, 132 N.W. 2d 826 (S.D.1965). In addition to the cases cited by appellant see also the recent case of Economy Mills of Elwell, Inc. v. Motorists Mutual Insurance Co., 154 N.W.2d 659 (Mich.Ct. of App., Nov. 29, 1967).

*Hauenstein* case, collated in footnote 3 above, the court found that the cracking, as a result of shrinkage, of acoustical plaster installed by the insured was an accident within the meaning of a comprehensive liability policy similar to the one in the present case. The trial court emphasized the affirmative nature of the action of shrinking and cracking, causing damage to the structure. We agree that this affirmative action test may often be a useful concept in cases of this type. What happened here is that an accident occurred in Stevens' plant which resulted in a later loss. We agree with the reasoning of the District Judge to the effect that the failure of the seed to germinate properly was not an accident, but rather was the result of the accident which happened at the plant when the seeds were on the premises of the insured. In essence the claims against Stevens seek damages because of something the seeds failed to do, i. e., produce in expected quantities, not because of something the seeds affirmatively did. The district court was justified in holding that no second accident occurred. In addition, to hold that liability exists in this case would, in effect, be to convert an accident policy into a policy providing protection by Maryland against any breach of warranty by Stevens that its product would react or produce in a certain manner. Such a position is especially untenable in the light of the fact that the premium paid by Stevens was only $71.00, whereas the productive qualities of over $600,000 worth of seed would be guaranteed.

Appellant places great emphasis on the case of St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361 (8 Cir. 1966). In that case Northern Grain Company sought a declaratory judgment holding that its liability insurer was required to defend any claim and pay any judgment against the company caused by the sale of the wrong type of seed wheat. The facts revealed that Northern sold and delivered to its customers wheat which it believed to be Selkirk seed wheat. It turned out that the seed wheat was actually a less valuable and less desirable variety known as Conley wheat. The difference can only be detected when the wheat heads appear. As soon as the mistake was discovered numerous claims were asserted by the purchasers. The insurance policy in that case was very similar to the policy in the instant case except for one crucial item. Instead of providing for coverage for "accident" only the policy in *Northern Grain* provided coverage of an "accident or occurrence". The court in *Northern Grain* failed to explicitly state whether it was finding an occurrence, an accident, or both and seemed to use the terms interchangeably.[4] It held that Northern Grain was covered by the policy. An "occurrence" is a broader and more encompassing term than "accident".[5] In our view there is a clear distinction in the cov-

---

4. The court stated its conclusion by using the following language:
   "* * * we are of the firm view, and so hold, that the occurrence under consideration satisfies the requirement that the claimed damages were caused by accident."

5. Webster's Third New International Dictionary (1961) defines the terms as follows:
   "Accident—an event or condition occurring by chance or arising from unknown or remote causes; * * * a sudden event. * * *"
   "Occurrence—something that takes place. * * *"

These terms were dealt with by the court in Aerial Agricultural Service of Montana, Inc. v. Till, 207 F.Supp. 50 (D.C.N.D.Miss.1962) in which the court delineated the following distinction:
   "To begin with, the word 'occurrence', to the lay mind, as well as to the judicial mind, has a meaning much broader than the word 'accident'. As these words are generally understood, accident means something that must have come about or happened in a certain way, while occurrence means something that happened or came about in any way. Thus *accident* is a special type of *occurrence*, but occurrence goes beyond such special confines and, while including accident, it encompasses many

erage provided by the policy in the *Northern Grain* case and the policy in the instant case. In any event, whether termed an accident or an occurrence, it is rather clear that the unintentional choice and sale of the wrong type of seed is closer to the concept of accident than are the events in this case which occurred after the seed were purchased and taken from the Stevens plant. It is admitted that the accident in the Stevens plant is not covered. Rather than providing comfort to the appellant, the case tends to support the district court's conclusion that there was no accident in this case after the seed left the premises of Stevens, even though there may have been an occurrence.

The cases of E. K. Hardison Seed Company v. Continental Casualty Company, Tenn.App., 410 S.W.2d 729 (1967) and St. Paul Mercury Insurance Company v. Sugarland Industries, Inc., 406 S.W.2d 778 (Tex.Civ.App.1966) lend further support to the finding that there was no accident. In the *Hardison* case the insured erroneously sold seeds to a purchaser warranting that they would produce green beans. In fact they produced white beans which were less valuable. The seed company was insured under a policy the material provisions of which were practically identical to those of the present case. The chancellor emphasized there was no damage to property caused by accident as required by the policy. It was pointed out "that the only thing that had occurred which could possible be termed an accident was the selecting and furnishing of the wrong seed to the customers, which had not occurred after possession of the (seed beans) had been relinquish-

ed by the (seed company) * * *." The Tennessee Court of Appeals in affirming the chancellor concluded "there is simply nothing to suggest an accident. * * * So, unless every unfulfilled warranty or representation is an accident, we must hold that (the) declaration describes a plain, clear, classical case of breach of warranty involving no element of accident whatsoever."

In St. Paul-Mercury Ins. Co. v. Sugarland Ind., Inc., 406 S.W.2d 778 (Tex. Civ.App.1966) the insured under a policy similar to the policy in the instant case warranted that certain cotton seed had a germination rate of 80% when in fact they did not. A purchaser of the seed sued the insurer, but the court held that this case was simply one for breach of warranty. "There were no pleadings nor findings nor evidence of negligence or accident after [the purchaser] received the seed. The dead seed failed to sprout resulting in lost profits, but there was no accident * *." Although the above two cases are not identical to the situation here under consideration, they are highly analogous and very persuasive on the issue of whether an accident occurred.

In view of all that has been said above we conclude that the trial court was justified in finding that there was no accident occurring away from the premises and after possession of the seed peanuts had been relinquished by Stevens.[6] This makes it unnecessary to decide the question of whether there was any "injury to property" within the meaning of the policy.

One other point raised by Stevens should be considered. Stevens

---

other situations as well. (Emphasis in original.)

\* \* \* \* \*

"It would, therefore, seem that from the usual and ordinary meaning of the words used the word 'occurrence' extends to events included within the term 'accident' and also to such conditions, not caused by accident, which may produce an injury not purposely or deliberately."

6. The following is from the trial court's memorandum opinion:

"The insurance here is not simply against the results of any accident, but only against the results of an accident which occurs after possession of the product had been relinquished to others by the insured. If the purchaser's loss is solely the result of the accident which occurred during the processing operation, as we believe it to be, then the policy does not cover the case."

argues that Maryland's complaint insofar as it sought a determination that it was under no obligation to pay any judgment which might be rendered against Stevens presented only an abstract, hypothetical question over which the district court had no jurisdiction, since there was no "case or controversy" as required by Article III of the Constitution. In support of this contention Stevens argues that a broad judgment such as was entered by the district court [7] can only be justified if no state of facts could be proven which would fall within the policy and impose liability. Green v. Aetna Insurance Company, 349 F.2d 919 (5 Cir. 1965). In the instant case all of the claims must, of necessity, be based upon a breach of either an express or an implied warranty of quality of the seed arising out of a failure of the seed to germinate properly and yield in expected quantities which was caused by the accidental overtreatment with the mercury compound and which admittedly occurred at the Stevens plant. In the instant case the facts with respect to the asserted claims were fully developed and known. The parties presented their respective contentions to the district court thoroughly and completely. We see no good reason, in the circumstances and under the facts here presented, to require further proceedings in the district court. The issues have been fairly presented for consideration and we think the district court properly and correctly decided those issues. The declaratory judgment in this case was properly entered.

After considering all other contentions asserted by the appellant, and finding them to be without merit, the judgment of the district court is hereby affirmed.

7. The judgment of the district court filed December 23, 1966, provides in part that the insurance policy issued by Maryland did not cover any claims,

"*  *  * by farmers or dealers asserted against Stevens Industries, Inc. as a result of the failure of seed peanuts sold by Stevens Industries, Inc. during the period from July 1, 1964 to July 1, 1965 to germinate  *  *  * or

produce in expected quantities.  *  *  * Maryland Casualty Company is not liable to pay any judgment obtained or any compromise settlement made arising out of any claim above referred to, nor is Maryland Casualty Company required under the terms of said policy to investigate, appear, answer, defend, or settle any claims above referred to."