**STAUFFER CHEMICAL COMPANY,**
**Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. 70 Civ. 4015.**

United States District Court,
S. D. New York.

Nov. 5, 1973.

Hart & Hume, New York City, for plaintiff; Jack Hart, Cecil Holland, Jr., New York City, of counsel.

D'Amato, Costello & Shea, New York City, for defendant; Mortimer C. Shea, New York City, of counsel.

## OPINION

GAGLIARDI, District Judge.

This is an action by Stauffer Chemical Company (hereinafter "Stauffer") seeking recovery under a Blanket Liability Policy issued to Stauffer by defendant, Insurance Company of North America (hereinafter "INA"). Upon an agreed statement of facts, Stauffer has made a motion for summary judgment on the issue of defendant's liability and INA has made a cross motion for summary judgment dismissing the complaint.

From the stipulated facts it appears that Stauffer manufactured a product known as Captan 4 Flowable, which was designed to protect potato seed pieces against "seed rot" and "damp off." In reliance upon Stauffer's representations that Captan 4 Flowable would so protect their potato seed pieces, various third parties (hereinafter "claimants") purchased large quantities of the product in March 1966 and applied it, in accordance with Stauffer's instructions, in the treatment of their potato seed pieces which were thereafter planted for the growing of potato crops. Such application of the product by claimants proved ineffectual as substantial damage, caused by "seed rot" and "damp off", resulted to claimants' potato seed pieces and potato crop. In June 1966 the claimants made claims against Stauffer for which an action was ultimately commenced in the United States District Court, District of Idaho, in October 1966. The complaint in the Idaho action alleged negligence and breach of warranty in Stauffer's representing that Captan 4 Flowable would prevent "seed rot" and "damp off"; it was further alleged that Stauffer was negligent either in manufacturing the product with an in-

sufficient quantity of Captan, the active ingredient, or in giving incorrect instructions for diluting the product.

Between the time the claims were first made against Stauffer and the time the Idaho suit was instituted, Stauffer gave written notice of the claims to INA pursuant to the terms of a Blanket Liability Policy issued to Stauffer by INA covering the period January 1, 1966 to January 1, 1967. Immediately after the commencement of the Idaho action, also in compliance with the terms of the Blanket Liability Policy, Stauffer forwarded copies of the summons and complaint in that action to INA. INA refused to defend the Idaho action, denying coverage of the claims. Said refusal was grounded upon INA's contention that its Blanket Liability Policy did not apply to liability which arose out of the inefficacy of Stauffer's products or the failure of its products to perform as represented. Stauffer thereupon defended the Idaho action with its own retained attorneys and settled the action prior to trial.

Upon the stipulated statement of facts, as summarized above, the parties to this action have presented two issues to this court for determination: (1) whether the Blanket Liability Policy afforded coverage to Stauffer for amounts reasonably paid in settlement of the Idaho claims; and, (2) whether INA is liable to Stauffer for reasonable amounts paid by Stauffer for attorneys' fees and disbursements incurred in the defense of the Idaho claims. The questions of the reasonableness of the amounts paid by Stauffer and the total amount, if any, of liability of INA in the instant action are expressly reserved by the parties for future determination.

## COVERAGE

With respect to the first question presented, INA agreed, in Insuring Agreement II of the Blanket Liability Policy in issue, subject to the limits of liability, exclusions, conditions, and other terms of the policy,

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof.

As stated in item 5 of the Declarations of said policy, liability pursuant to Insuring Agreement II is limited to $100,000 per "each occurrence." The term "occurrence" is defined in paragraph D(c) of the conditions of the policy as follows:

> With respect to Insuring Agreement II "occurrence" means either an accident happening during the policy period or a continuous or repeated exposure to conditions which unexpectedly and unintentionally caused injury to or destruction of property during the policy period. . . .

In the instant case, it is clear that the alleged injury to and destruction of the claimants' potato seed pieces and potato crops constituted "injuries to or destruction of property" within the meaning of the very broad coverage afforded under Insuring Agreement II of this Blanket Liability Policy. *See* St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361, 365–367 (8th Cir. 1966). It is further apparent that the injury to claimants' potato seed pieces and potato crops "unexpectedly and unintentionally" resulted from "a continuous or repeated exposure to conditions," thus constituting an "occurrence" within the meaning of paragraph D(c) of the policy. INA argues, however, that there was no "occurrence" because the "conditions" that caused the injury was not Stauffer's product, Captan 4 Flowable, which merely failed to prevent the "conditions" ("seed rot" and "damp off") that unexpectedly and unintentionally caused the injury. This contention must be rejected because there is nothing in the definition of the term "occurrence" nor is there language anywhere else in the policy, which prescribes what or who must cause the "conditions" which cause the injury to or destruction of property.

■ The case of Aerial Agricultural Service of Montana, Inc. v. Till, 207 F. Supp. 50 (N.D.Miss.1962), involved a suit against an insurer on a liability policy similar to the one in the instant case. That policy, however, defined the term "occurrence" to mean either an accident or "[a] condition *created by the insured* which during the policy period accidentally causes injury or destruction. . . ." 207 F.Supp. at 55 (emphasis added). There would have been no occurrence in the instant case under the definition set forth in the *Till* policy since the condition ("seed rot" and "damp off") which caused the injury here was not *created by* the insured (Stauffer); the insured's product merely passively failed to prevent the condition, contrary to the representations of the insured. However, it was not made a condition of coverage with respect to the definition of occurrence in the instant policy that the condition causing the injury be *created by the insured,* and the court may not inject a clause into the policy or make a new contract for the protection of the insurer. Sperling v. Great American Indemnity Co., 7 N.Y.2d 442, 447, 199 N.Y.S.2d 465, 469, 166 N.E.2d 482, 485 (1959); Taylor v. United States Casualty Co., 269 N.Y. 360, 363, 199 N.E. 620, 621 (1936).

Apart from the broad coverage afforded by Insuring Agreement II, the definition of "products hazard", in paragraph D(d), one of the hazards covered by the policy, specifically includes " . . . a warranty of goods or products manufactured, sold, handled, or distributed by the named insured. . . ." In this case, Stauffer's liability to the claimants was predicated, in part, upon breach of its warranty that Captan 4 Flowable would prevent "seed rot" and "damp off." It is further provided in paragraph D(d) that a products hazard exists only "if the occurrence happens after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such occurrence happens away from premises

owned, rented or controlled by the named insured." The parties to this action have stipulated that these conditions have been met.

■ The definition of products hazard would thus appear to be satisfied in this case. INA contends, however, that the damage to claimants' potato seed pieces and potato crops is not covered under the definition of products hazard, again for the reason that there has been no occurrence, an element of the definition. This issue has already been discussed with respect to Insuring Agreement II, and the same reasoning applies here. There having been an occurrence, INA's denial of coverage on the ground that its Blanket Liability Policy afforded no coverage for Stauffer's liability arising out of the failure of Stauffer's products to perform as represented must therefore be rejected. The policy does insure against liability for damage to property imposed because of the failure of the product to comply with express or implied warranties.

■ The case of Stevens Industries, Inc. v. Maryland Casualty Co., 391 F.2d 411 (5th Cir. 1968), aff'g 279 F.Supp. 681 (Md.Ga.1966), involved a claim against the insured similar to that asserted in the instant case, but the policy in that case contained a definition of "products hazard" which did not include "a warranty of goods." In fact, the policy expressly excluded "a warranty of goods" from coverage with respect to products hazards. The policy in that case insured a seed processor against damages caused by "accidents" occurring away from the premises of the named insured, and the court held that, under the terms of the policy, claims of certain buyers of seed against the processor for failure of peanut seeds to properly germinate and produce were not within the coverage of the policy since no "accident" had occurred. In so holding, the court reasoned as follows:

> In essence the claims against Stevens [the insured] seek damages because of something the seeds failed to do, i. e.,

produce in expected quantities, not because of something the seeds affirmatively did. . . . In addition, to hold that liability exists in this case would, in effect, be to convert an accident policy into a policy providing protection by Maryland [the insurer] against any breach of warranty by Stevens that its product would react or produce in a certain manner. 391 F. 2d at 415.

Applying this sound reasoning to the instance case, to deny coverage here would be to convert a policy expressly protecting against warranty liability into an accident policy, and it is settled that a court is not at liberty to make a new contract for the protection of the insurer. Sperling v. Great American Indemnity Co., supra; Taylor v. United States Casualty Co., supra. Where, as here, no exclusion is raised as a defense, coverage is established upon a showing that the "insured [has] become legally obligated to pay . . . damages because of injury to or destruction of property." And there is nothing in the policy which prescribes how such liability must arise or requires that direct, physical injury be affirmatively inflicted by the insured's product to invoke coverage.

It should be noted that the policy in the Stevens case provided coverage for liability "caused by accident"; the term "occurrence" does not appear in the language of the policy. In holding that the failure of the peanut seeds to properly germinate and produce did not constitute an "accident", the court indicated that such failure may, however, have been an "occurrence" since the latter is "a broader and more encompassing" term than the former. Supra, 391 F.2d at 415–416. As noted by the court in Stevens, these terms were considered in Aerial Agricultural Service of Montana, Inc. v. Till, supra, at 57–58, wherein the following distinction was made:

To begin with, the word "occurrence", to the lay mind, as well as to the judicial mind, has a meaning much broader than the word "accident". As these words are generally understood, accident means something that must have come about or happened in a certain way, while occurrence means something that happened or came about in any way. Thus accident is a special type of occurrence, but occurrence goes beyond such special confines and, while including accident, it encompasses many other situations as well. (Emphasis in original.)

The use of the term "occurrence" in the instant Blanket Liability Policy rather than the more restrictive term "accident" is consistent with an intention to afford coverage for "all sums which the insured shall become legally obligated to pay" regardless of how such liability arose.

The consistency of the terms of Insuring Agreement II with the definition of "products hazard" in this Blanket Liability Policy indicates that the parties intended broader coverage than afforded by an ordinary accident policy. This blanket coverage expressly included warranty liability as defined in the "products hazard" clause. Most policies of this type, which omit "a warranty of goods" from their definition of products hazard, provide for basic coverage in language very similar to that employed in Insuring Agreement II of the instant policy except that the phrase "caused by accident and/or occurrence" is tacked on to the end of this clause. See, e. g., the policies involved in the following cases: St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361, 363 (8th Cir. 1966); Bowman Steel Corp. v. Lumbermans Mutual Casualty Co., 364 F.2d 246, 248 (3rd Cir. 1966); Maryland Casualty Co. v. Stevens Industries, Inc., 279 F.Supp. 681, 682 (M.D.Ga. 1966). Such omission of warranty liability from policies which have basic property damage coverage for liability "caused by accident and/or occurrence" is consistent with an intention to exclude warranty coverage. Similarly, in the instant policy, the omission of the phrase "caused by accident and/or occurrence" from the language of Insuring Agreement II is consistent with the ex-

**1308**

press inclusion of "a warranty of goods" in the definition of "products hazard," and indicates that coverage for warranty liability, which includes coverage for liability arising from breach of contract as well as liability for damages caused by accident, was contemplated by the parties.

Accordingly, with respect to the first question presented, we conclude that the Blanket Liability Policy afforded coverage to Stauffer of the Idaho claims.

## DUTY TO DEFEND

█ In Insuring Agreement III of the Blanket Liability Policy, INA agreed that

> With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . .

Since we have determined that the policy afforded coverage to Stauffer of the Idaho claims under Insuring Agreement II, it is clear that, under the terms of Insuring Agreement III, INA had a duty to defend the Idaho suit.

Having thus concluded that the policy afforded coverage and imposed an obligation to defend, the refusal of INA to defend renders it liable to Stauffer both for reasonable amounts paid in settlement of the suit, Matter of Empire State Surety Co., 214 N.Y. 553, 563, 108 N.E. 825, 827 (1915), and reasonable amounts paid in defense of the suit. Goldberg v. Lumber Mutual Casualty Co., 297 N.Y. 148, 154, 77 N.E.2d 131, 133 (1948).

Accordingly, the motion for summary judgment is granted, and the cross motion to dismiss the complaint is denied.

So ordered.