ST. PAUL MERCURY INSURANCE
COMPANY, Appellant,

v.

SUGARLAND INDUSTRIES, INC., Appellee.

No. 4091.

Court of Civil Appeals of Texas.

Eastland.

Sept. 9, 1966.

Rehearing Denied Oct. 7, 1966.

Butler, Binion, Rice, Cook & Knapp, Frank J. Knapp, Houston, George Roane, Rosenberg, for appellant.

Baker, Botts, Shepherd & Coates, Alvin M. Owsley, Jr., and John C. Held, Houston, for appellee.

WALTER, Justice.

J. T. Falco and others purchased cotton seed from Sugarland Industries. Sugarland represented to Falco that the seed had a germination rate of 80%. Falco filed suit against Sugarland for lost profits because the seed did not have a germination rate of 80%. Sugarland called upon St. Paul Insurance Company to defend such suit because, it contended, it was covered by a policy which it had with St. Paul. The insurance company denied coverage and refused to defend. Sugarland provided its own defense and lost the case, which is reported in 360 S.W.2d 806, Sugarland Industries, Inc. v. Falco, (Waco Ct.Civ.App. 1962, writ ref. n. r. e.), to which reference is made for a more detailed statement of the facts.

Sugarland filed this suit against St. Paul to recover the amount it paid out on the Falco case contending that its policy covered the hazard involved. In a non-jury trial, it recovered a judgment and St. Paul has appealed.

Appellant states its position as follows:

"Appellant has taken the position from the inception of this controversy that its policy of liability insurance does not afford any coverage for the kind of claim and demand made by Falco and others and subsequently asserted and recovered by them in their suit against Sugarland, and that same is not within the purview of a policy of liability insurance. Broadly stated, Appellant says that the liability fixed against Appellee in the Falco case is an ordinary commercial loss arising out of a sale of goods under a contract of sale in which the purchaser has asserted and recovered lost profits growing out of the failure of the goods to measure up to the quality and character of the goods that were bargained for, and as they were represented to be by

the vendor. Appellant denies that the liability claimed and fixed against Sugarland in the Falco action is one 'caused by accident' within the meaning of its liability policy, and denies that the claim and recovery of Falco and others was one for damages 'because of injury to or destruction of property, including the loss of use thereof' within the insuring agreements of such policy. Appellant says that a holding that its policy affords coverage to this type of situation would have the effect of converting a liability policy into an agreement to indemnify the insured against liability for the insured's failure to faithfully perform its contractual obligations and would make the insurer a guarantor of the quality, quantity and satisfactory performance of its insured's products sold by it in ordinary vendor-vendee relationships without regard to the language of the insuring agreements, conditions and exclusions of the policy which are referred to in Appellant's answer."

Appellee says that the relevant portions of the policy are as follows:

"DECLARATIONS

Item 3. Coverages

C. Property Damage Liability—Except Automobile
$500,000 aggregate products

Item 4. The declarations are completed on attached schedules designated A, B.

ST. PAUL MERCURY INSURANCE COMPANY * * *

AGREES with the Insured, * * *

INSURING AGREEMENTS

I. Coverage C—Property Damage Liability—Except Automobile

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

II. Defense, Settlement, Supplementary Payments

With respect to such insurance as is afforded by this Policy, the Company shall:

(a) defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the Company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) (1) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this Policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the Insured in the event of automobile accident or automobile traffic law violation during the Policy period, not to exceed $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

(2) pay all expenses incurred by the Company, all costs taxed against the Insured in any such suit and all interest accruing after entry of judgment until the Company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the Company's liability thereon;

(3) pay expenses incurred by the Insured for such immediate medical and surgical relief to others as shall be imperative at the time of the accident;

(4) reimburse the Insured for all reasonable expenses, other than loss of earnings, incurred at the Company's request;

and the amounts so incurred, except settlements of claims and suits, are payable by the Company in addition to the applicable limit of liability of this Policy.

## EXCLUSIONS

This Policy does not apply:

(a) to liability assumed by the Insured under any contract or agreement except under coverages A and C, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products;

\* \* \* \* \* \*

(j) under coverage C, to injury or to destruction of \* \* \* (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named Insured, or work completed by or for the named Insured, out of which the accident arises; \* \* \*.

## CONDITIONS

3. Definitions

(g) Products Hazard. The term 'products hazard' means;

(1) goods or products manufactured, sold, handled or distributed by the named Insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named Insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named Insured \* \* \*; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, \* \* \*.

13. Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this Policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy. Nothing contained in this Policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability."

 The rules of construction which we are to follow in construing the pertinent provisions of said policy have been summarized by Chief Justice Chadick in Kelley v. American Insurance Company, Tex.Civ. App., 316 S.W.2d 452, 455 (affirmed 160 Tex. 71, 325 S.W.2d 370) as follows:

"In construing the American policy it is necessary to apply certain elementary rules of construction (all rooted in the same basic concept), including these: (1) An insurance policy will be construed strictly against the insurer; (2) when the terms of an insurance contract are capable of two or more constructions and under one a recovery is allowable and under the other it is denied, the construction which permits recovery will be given the policy; (3) forfeitures of insurance coverage is not favored; and (4) if a fair and reasonable construction of an insurance contract will permit, a meaning will be given to its language that effectuates a contract of insurance rather than defeats it. See 24–B Tex.Jur., Insurance, Secs. 26, 27, 28, 29, 30, 31 and 32, pp. 86–109, and authorities there listed \* \* \*."

In Vaughn v. Atlantic Insurance Company, 397 S.W.2d 874 at page 875 (Ct.Civ.App. 1965, n. r. e.) the court said:

"If the words used in a policy are plain and unambiguous, it is the duty of the court to give effect to such language in

accordance to its plain, ordinary meaning, and not make a new contract for the parties by arbitrary judicial construction. 32 Tex.Jur.2d, pars. 54 and 60."

St. Paul contends that the court erred in holding that the damages sustained by Falco were caused by accident. In Sugarland Industries, Inc. v. Falco, 360 S.W.2d 806, the court said:

"Plaintiffs grounded their action upon a knowingly fraudulent misrepresentation of the germination rate of certain cotton seed which was sold by defendant to them."

The jury found:

" * * * that the plaintiffs lost profits in the amounts of $52,241.08 during the year of 1959 as a proximate result of the cotton seed's not having had a germination rate of 80% * * *."

Falco did not contend that the loss of profits was caused by accident or that the loss was the result of Sugarland's negligence. The opinion in the Falco case does not assert that the cotton farmers were claiming damage "because of injury to or destruction of property, including the loss of use thereof, caused by accident."

Sugarland relies on Orkin Exterminating Company, Inc. v. Massachusetts Bonding and Insurance Company et al., 400 S.W.2d 20 (Tex.Civ.App.1965). In construing the words "caused by accident", the court said:

"While there is authority to the contrary, the majority rule appears to be that stated in Appleman, Insurance Law and Practice, Vol. 7A, Sec. 4492, p. 7, as follows: 'Injuries resulting from ordinary negligence are considered to have been accidental as has been the case even though gross negligence were shown, where there was no actual intent to injure'."

The court held that an act caused by negligence could be an occurrence caused by accident. We do not consider the Orkin case in point and do not consider it ap-

plicable to the facts in this case as there are no pleadings of negligence or accident.

Sugarland says " * * * an accident did occur in this case when the seeds failed to sprout since it was undesigned and unforeseen that such failure would occur." Sugarland contends that Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122 (1954), is the leading case on what "caused by accident" means. The court there said:

"There is no doubt that the property damage to the building caused by the application of the defective plaster was 'caused by accident' within the meaning of the insurance contract, since the damage was a completely unexpected and unintended result. Accident, as a source and cause of damage to property, within the terms of an accident policy, is an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause."

Hauenstein sold plaster to a contractor who used it on a job. The plaster shrunk and cracked making it necessary to remove it and re-plaster. The contractor sued Hauenstein for breach of warranty. Hauenstein was covered against liability for accidental property damage by an insurance contract with the defendant insurance company under which contract the insurance company agreed:

"TO PAY any loss by reason of the liability imposed by law or contract upon the Insured for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The insurance company refused to assume any responsibility for the claim and Hauenstein filed a declaratory judgment suit to fix the insurance company's liability for the contractor's claim. The court said:

"The question remains, however, whether the use and application of the plaster by the consumer or his contractor has ac-

cidentally brought injury to property—including the loss of use thereof—whereby plaintiffs have incurred liability for damages. Aside from any injury to the plaster itself, was the building injured and damaged by its application? It is undisputed that after this new type of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage."

The Hauenstein case is distinguished from the present case because in Hauenstein there was an accident and damage to property.

As found by the jury in the Falco case, the lost profits were the result of the "cotton seeds not having had a germination rate of 80%." There were no pleadings nor findings nor evidence of negligence or accident after Falco received the seed. The dead seed failed to sprout resulting in lost profits, but there was no accident, neither was there any damage to property.

■ Sugarland has failed to establish coverage under its policy and we are compelled to reverse the judgment.

■ Appellee presents one cross point complaining about the alleged improper rejection of evidence. We fail to find in its brief any reference to the pages of the record where it may be found as required by Rule 418, Texas Rules of Civil Procedure. It also failed to cite any authorities

in support of its point. Points that are not briefed are waived. Garcia v. Lacey, 316 S.W.2d 183, CCA 1958 (no writ history).

The judgment is reversed and judgment is rendered for the appellant.