Frances JACKSON, Appellant,

v.

Juarene JACKSON, Appellee.

No. 17230.

Court of Civil Appeals of Texas,
Fort Worth.

June 18, 1971.

Rehearing Denied Sept. 10, 1971.

L. Clifford Davis, Fort Worth, for appellant.

Yarborough, Yarborough & Hinds, and Roger Turner, Dallas, for appellee.

## OPINION

BREWSTER, Justice.

Juarene Jackson, the wife of Ruey E. Jackson, deceased, instituted this suit to recover the death benefits that were payable under a Workmen's Compensation Insurance policy as a result of the death of the said Ruey E. Jackson from on-the-job injuries that were sustained by him.

The defendants in the case were Liberty Mutual Insurance Company, the insurance carrier, and Frances Jackson, the stepmother of the deceased.

After the suit was filed the carrier admitted liability and tendered the death benefits into court. The controversy in the case was between the wife and the stepmother of the deceased, the controlling question being whether or not the wife had at the time of deceased's injuries without good cause and for a period of three years prior thereto abandoned her husband.

The parties recognized that under the facts of this case and under the provisions of Art. 8306, Sec. 8a, Vernon's Ann.Tex. St., the surviving wife, Juarene Jackson, would be entitled to all such death benefits unless she had abandoned the deceased, within the meaning of that statute, for the period of time therein provided. If the wife, Juarene Jackson, had at the time her husband was injured without good cause and for a period of three years prior thereto abandoned the deceased, then under the facts of this case the stepmother, Frances Jackson, would be entitled to all such benefits.

The part of Art. 8306, Sec. 8a, Vernon's Ann.Tex.St., that is applicable here provides: "The compensation provided for in the foregoing section of this law (relating to death benefits) shall be for the sole and exclusive benefit of the (surviving) * * * wife who has not at the time of the injury without good cause and for a period of three years prior thereto, abandoned her husband, * * * and stepmother, without regard to the question of dependency, * * * the amount recovered * * * shall be distributed among the beneficiaries as may be entitled to the same as hereinbefore provided according to the laws of descent and distribution * * *."

A jury trial was had. The jury found the issue on abandonment in favor of the wife and the trial court then rendered judgment in favor of the wife awarding her all the death benefits that are in controversy and the stepmother has appealed.

The charge of the court contained the following issue and instruction on the abandonment question:

"Do you find from a preponderance of the evidence that Juarene Jackson, on April 25, 1969, and for a period of three years prior thereto had not abandoned Ruey Edward Jackson?

"Your answer to this question will be either:

" 'She had not so abandoned Ruey Edward Jackson'

"or

" 'She had so abandoned Ruey Edward Jackson'."

The jury answered: "She had not so abandoned Ruey Edward Jackson.

"In connection with this issue, you are instructed that the word 'Abandoned', as used in this issue, means the act of a wife voluntarily leaving the bed and board of her husband, as a wife, with the intention on her part not to return and live with him as husband and wife, and perform her marital obligations as a wife towards him."

■ Appellant's first point is that the trial court erred in overruling her motion for instructed verdict made at the close of plaintiff's evidence, said motion being urged on the grounds that the evidence before the court established as a matter of law that the wife, appellee here, had abandoned the decedent within the meaning of the Workmen's Compensation Law.

As the point indicates, the motion relied upon was made at the close of the plaintiff's evidence. The record shows that after this motion was dictated to the court reporter and overruled by the trial court the appellant did not elect to stand on such ruling, but proceeded at that point to introduce the testimony of her own witnesses. The motion for instructed verdict was never re-urged at any subsequent stage of the trial. Under these circumstances the appellant waived the right to complain of the court's action in overruling the motion. It is settled that where a party moves for an instructed verdict at the close of plaintiff's evidence, and such motion is denied the moving party must stand on the ruling or he waives the alleged error. Texas Construction Rentals, Inc. v. Harrison, 410 S. W.2d 482 (Waco, Tex.Civ.App., 1966, ref., n. r. e.); Travelers Insurance Company v.

Arnold, 378 S.W.2d 78 (Dallas, Tex.Civ. App., 1964, no writ hist.); Barrett v. Curtis, 407 S.W.2d 359 (Dallas, Tex.Civ.App., 1966, no writ hist.); Thornhill v. Elskes, 412 S.W.2d 73 (Waco, Tex.Civ.App., 1967, no writ hist.); Orkin Exterminating Company . v. Schorsch, 436 S.W.2d 422 (San Antonio, Tex.Civ.App., 1968, no writ hist.); and 56 Tex.Jur.2d 545, Trial, Sec. 205.

For the reasons indicated we overrule appellant's first point.

■ We overrule appellant's point one for the additional reason that the evidence offered during this trial did not show as a matter of law as contended by appellant that the appellee, wife, had abandoned decedent within the meaning of the Workmen's Compensation Act.

The special issue used in this case and the instruction as to the meaning of "abandoned" were obviously borrowed from the opinion in the similar case of Associated Employers Lloyds v. Wiggins, 208 S.W.2d 705 (Fort Worth, Tex.Civ.App., 1948, ref., n. r. e.).

■ The mere separation of the spouses for the required period of time does not constitute an abandonment and such fact does not necessarily lead to the conclusion that there was the intention of abandonment. Besch v. Besch, 27 Tex. 390 (Tex. Sup., 1864). The case also holds that this intention must continue throughout the required period of time.

■ In order to constitute an "abandonment" the wife charged with "abandonment" must have voluntarily left the bed and board of her husband *with the intention of not returning to live with him as his wife*. Associated Employers Lloyds v. Wiggins, supra; Art. 4629, Sec. (2), V.A. T.S. (which statute was in effect at the times involved here); and Ritch v. Ritch, 242 S.W.2d 210 (Dallas, Tex.Civ.App., 1951, no writ hist.). Those cases hold that the intention indicated is an essential element of abandonment.

■ It is equally well settled in Texas that the appellee cannot be held to have abandoned the decedent if any one of the following facts was present in this case: (1) if her leaving was procured by the husband or done at his request; (2) if the separation of the spouses was by virtue of their mutual agreement; and (3) if she separated from decedent with his consent. This has long been the law in Texas. See Schulz v. L. E. Whitham & Co., 119 Tex. 211, 27 S.W.2d 1093 (1930); 27A C.J.S. Divorce § 38(1), p. 118; 20 Tex.Jur.2d 380, Sec. 34, "Divorce and Separation"; Bain v. Bain, 252 S.W. 252 (Beaumont, Tex. Civ.App., 1923, no writ hist.); Villarreal v. Villarreal, 263 S.W.2d 819 (Austin, Tex. Civ.App., 1953, no writ hist.); and Miller v. Miller, 306 S.W.2d 175 (San Antonio, Tex.Civ.App., 1957, no writ hist.).

The following is from the opinion in McGowen v. McGowen, 52 Tex. 657 (Tex. Sup., 1880) at page 665: "To constitute a voluntary abandonment of her husband by Mrs. McGowen, * * * there must have been both the physical act of separation and the mental act or motive which constituted the intention of abandonment."

And at page 667 of the same opinion the court said:

"To constitute such voluntary separation with intention of abandonment, which would authorize a divorce under the statute, the plaintiff should have neither caused, procured, nor consented to the separation. It should not have been a separation by mutual consent, but should have been a separation with intent of abandonment, under circumstances which would have amounted to a voluntary desertion upon the part of the defendant, without the fault, procurement, or consent of plaintiff, and should have been continued for the length of time required by the statute."

The Supreme Court reversed the McGowen case, supra, because the trial court did not instruct the jury in substance that there could be no abandonment if the parties agreed to the separation, or if the wife left as the result of the husband's expressed desire that she go, or if the husband consented to the separation.

An "abandonment" as referred to in the divorce statutes contemplates a voluntary leaving without sufficient cause under such circumstances as to constitute an offensive desertion of the other spouse. Hare v. Hare, 10 Tex. 355 (Sup.Ct., 1853).

■ We hold that it takes the same conduct to constitute "abandonment" within the meaning of Art. 8306, Sec. 8a, as it took to constitute an "abandonment" under the divorce laws (Art. 4629, Sec. (2)). We are convinced that the legislature did not intend to deprive the surviving spouse of death benefits payable under the Workmen's Compensation Law in the absence of conduct on the survivor's part toward decedent that was of such a reprehensible nature as to constitute grounds for divorce under the "abandonment" section of the divorce statute.

In Doty v. Travelers Ins. Co., 31 F.Supp. 186 (1940) the court says at page 188 of the opinion (referring to Art. 8306, Sec. 8a): "In passing this statute, it is probable that the Legislature had in mind the Texas Statute making three years abandonment grounds for divorce. Article 4629, Texas Revised Civil Statutes of 1925." We also are convinced that this statement is correct.

The evidence in this case does not establish as a matter of law any of the following three facts: (1) that appellee's separation from decedent was with the intention of not returning to live with him as his wife; (2) that such separation did not occur with decedent's consent; and (3) that such separation did not result from the mutual agreement of the parties. These matters were for the jury to decide under the proof made in this case and the court therefore properly overruled appellant's motion for instructed verdict.

There was evidence in the record to the following effect: Ruey Jackson, appellee's

husband, died on April 25, 1969; they were married in Dallas in 1948; they had lived together in Dallas for about 3 years before deceased moved back to Fort Worth; after he had been in Fort Worth for about one year appellee moved there in 1953 to live in the same house with deceased; during this interval she continued to work at the steady job she held in Dallas; this required her to get up at 5:30 A.M. to commute to Dallas to her work and then return to Fort Worth in the evenings; she has had this same job for 21 years; Ruey did construction work and it was not steady; it became too inconvenient for her to commute back and forth each day so she moved back to Dallas in mid 1954 where her job was; Ruey continued to live in Fort Worth until his death; she and Ruey had no hard feelings about her moving to Dallas; *Ruey told appellee it was all right for her to move to Dallas if she wanted to because after they got their minds settled they would buy in whichever place appellee wanted to live, Dallas or Fort Worth*; after she moved back to Dallas in 1954 Ruey would go to Dallas to see her about every second weekend; *from 1954 up until his death each time Ruey visited appellee about all they ever talked about was where they would live when they got back to living together, for he planned to buy a home in whichever of the two cities she wished to live in; it was her intention to live with him if he moved to Dallas,* but he had not made up his mind about his job, for when he did live in Dallas jobs were hard for him to find; appellee and Ruey continued to have sex relations on a regular basis from 1954 up until he died; they had sex relations regularly during the last 3 years of his life; they spent some nights at her home together and others together at motels; she never had any marriage other than the one to Ruey and Ruey never took up with any other woman after she moved back to Dallas; she cooked for him when he visited her in Dallas; and although Ruey sued appellee for divorce in 1956 he had the case dismissed not long thereafter.

There was other evidence in the case that contradicted to some extent the testimony above outlined. All of the evidence in the record presented a fact issue on the question of abandonment and the trial court correctly presented the issue to the jury for its determination.

Appellant's second point is that the evidence is insufficient to support the jury's finding that the appellee had not abandoned the decedent. We have reviewed the entire record and hold that the evidence offered during the trial is sufficient to support the jury's finding and overrule this point of error.

■ Appellant's third point contends that the court erred in not dividing the death benefits pursuant to a written agreement entered into between appellant and appellee. We overrule this point.

The Industrial Accident Board had awarded all the death benefits to appellant (stepmother) to the exclusion of the appellee (wife).

In her trial pleading filed in this case the appellant alleged .that she, as the stepmother, was the sole and exclusive beneficiary of Ruey Jackson, deceased, and as such was entitled to all the death benefits payable under Art. 8306, Sec. 8a, because the appellee (wife) had abandoned deceased without good cause more than fifteen years before his death.

The appellant in this trial pleading made no mention of the alleged settlement agreement between her and appellee but sought throughout the trial and through verdict time to recover the entire death benefits to the exclusion of the wife.

Before the trial began appellant (having been successful before the Industrial Accident Board and having there been awarded all the death benefits) made a motion in limine to have suppressed all testimony or comments by appellee's attorneys relative to a written compromise agreement between appellant and appellee by which they

agreed to apportion the death benefits between them in a certain way.

The trial judge granted appellant's motion and instructed appellee's counsel to not mention in any way or offer any evidence during the trial of the proposed settlement agreement between the parties.

This order was operative against appellee and her counsel throughout the trial. It was never revoked. By reason of appellant's conduct in procuring this order the appellee was prejudiced in that she was prevented from fully developing the facts relative to the settlement agreement.

Under these circumstances we hold that the appellant is now estopped, after return of the jury verdict adverse to her, from trying to enforce such agreement on the grounds that it is a valid and binding agreement and enforceable against both parties. See 31 C.J.S. Estoppel § 117, p. 610.

It was not until several days after the jury verdict was returned, adverse to her prior contentions, that appellant, without leave of the court and without even having sought leave of the court, filed her pleading alleging the settlement agreement and seeking its enforcement.

The record in this case clearly shows that the matter relating to the settlement agreement was not fully developed. Both parties were represented by the same lawyer when the matter was before the Industrial Accident Board and when the alleged agreement was entered into. Contention was made during the trial that the same lawyer who prepared the agreement could not properly represent both appellant and appellee in this case because their claims were in direct conflict to each other. Either the wife was entitled to all the death benefits to the exclusion of the stepmother, or the stepmother was entitled to all of them to the exclusion of the wife.

According to appellant's trial amendment filed after verdict was returned, the alleged settlement agreement was dated July 9, 1969. Appellant's trial pleading alleged that the final award of the Board awarding all the benefits to the stepmother was made August 21, 1969, which was almost one and one-half months after the settlement agreement was made. There is no explanation in the record as to when this agreement was sent to the Board. The fact that the Board did not give effect to the agreement would give rise to the questions of whether the Board ever actually received the agreement, and, if they did have it in their possession at the time of making their award, why did they not give full effect to it in a case such as this? Was it because the Board had determined that for some reason made apparent to them this settlement agreement was not enforceable against the parties?

We are convinced that had it not been for the court order rendered pursuant to appellant's motion suppressing the evidence about the settlement agreement that all of such questions would have been fully developed in the evidence.

Since the order procured by appellant suppressing evidence about the agreement was operative throughout the trial, and since appellee was precluded thereby from fully developing the matters relating to the agreement, we hold that there was no trial by the implied consent of both parties of the issues relating to the validity of the settlement agreement. For these reasons Rule 67, Texas Rules of Civil Procedure, is inapplicable in this case.

In appellant's 4th and last point she contends that the court erred in denying an attorney's fee to the stepmother's attorney, who handled the claim of all potential claimants before the Board.

We overrule this point because there is no assignment of error in appellant's mo-

**282**

tion for new trial that is germane to her Point 4. This was a jury trial and appellant made no mention of this point in her motion for judgment notwithstanding the verdict.

Rule 324, T.R.C.P., requires a motion for new trial as a prerequisite of appeal in a case such as this.

Rule 374, T.R.C.P., then provides in substance that a ground of error not distinctly set forth in a motion for new trial, in cases where a motion for new trial is required, shall be considered as waived.

Under the facts of this case for lack of a germane assignment of error the appellant's Point 4 was waived. Reynolds v. Pettigrew, 358 S.W.2d 880 (Dallas, Tex. Civ.App., 1962, no writ hist.); Steinke v. Schmid, 223 S.W.2d 955 (Waco, Tex.Civ. App., 1949, no writ hist.); Sterling v. Tarvin, 456 S.W.2d 529 (Fort Worth, Tex. Civ.App., 1970, ref., n. r. e.); and Smith v. Davis, 453 S.W.2d 340 (Fort Worth, Tex. Civ.App., 1970, ref., n. r. e.).

We also overrule appellant's Point 4 for the additional reason that she has failed to brief the point. She has merely stated what she claims constituted error and a few facts and then pitched it into the lap of the court for an exercise in briefing, without making any attempt at all to aid the court by the citation of authorities that she relies upon in support of her contentions.

When an appellant fails to brief a point, he waives it. Smith v. Davis, supra; McMillen Feeds, Inc., of Texas v. Harlow, 405 S.W.2d 123 (Austin, Tex.Civ.App., 1966, ref., n. r. e.); and St. Paul Mercury Ins. Co. v. Sugarland Indus., Inc., 406 S. W.2d 778 (Eastland, Tex.Civ.App., 1966, ref., n. r. e.).

The judgment is affirmed.