The CITY OF SULPHUR SPRINGS,
Appellant,

v.

Durwood STEED et ux., Appellees.

No. 1045.

Court of Civil Appeals of Texas,
Tyler.

Feb. 16, 1978.

W. T. Allison, II, Ramey & Allison, Sulphur Springs, for appellant.

Coy Johnson, Smith, Johnson & McDowell, Sulphur Springs, Woodrow H. Edwards, Mount Vernon, for appellees.

MOORE, Justice.

This is an eminent domain proceeding. Condemnor, City of Sulphur Springs, instituted the proceedings to condemn a twenty-foot wide sewer easement some 1,672 feet in length consisting of approximately three-fourths of an acre across condemnee's 102.5-acre dairy farm. Condemnee, not being satisfied with the award of the special commissioners, appealed therefrom and trial was had before the court and jury in the District Court of Hopkins County, Texas. It was stipulated that the value of the three-fourths acre easement taken was $836.50. In response to Special Issue No. 1, the jury found that the average per acre value of the remaining 101.75 acres before the condemnation was $1,200 per acre, and in response to Special Issue No. 2 found that the average per acre value after the taking of the sewer easement was $1,000 per acre. Judgment was rendered in favor of the condemnee for the sum of $21,186.50, from which judgment the city perfected this appeal.

We affirm.

In its statement in condemnation the city sought (1) to condemn the fee title to the three-fourths acre tract; (2) the right to construct, alter, maintain and operate and replace at any time, now or in the future, sewer lines of any kind, number or size, in, on, under and across the easement; (3) the right of free ingress and egress over and across all of the remainder of the condemnee's property adjacent thereto; and (4) the right to keep the surface and subsurface of said easement clear at all times of all improvements, and all other obstructions or hindrances in any way affecting the city's rights thereunder.

The city seeks a reversal by three points of error, urging that there is no evidence to support the jury's finding on Special Issue No. 2 that the average per acre value of the 101.75-acre tract after the taking of the sewer was $1,000 per acre. Alternatively, the city contends that such finding is against the overwhelming weight and preponderance of the evidence.

The landowner admitted the city's right to take the easement. Thus, the issue in dispute is whether the evidence supports the finding that the taking of the easement resulted in a $200 per acre diminution in the value of the remainder.

The landowner offered four witnesses who testified as to the "before" and "after" value of the remainder of the land.

Wayne McGrady, a licensed real estate agent, testified that the value of the remainder of the land was $1,200 per acre before the condemnation and $1,000 after the taking of the easement. His reason for the diminution in value was based on the following conclusions: (1) the taking would vest all right, title and interest in the twenty-foot strip in the city and would therefore have the effect of dividing the land in two tracts; (2) since the city had the right to install any size pipe above the ground, the installation of such pipes above the ground would materially interfere with the use of the land as a whole; (3) the installation of the sewer line would result in a loss of privacy; (4) the four manholes which the city proposed to construct on the easement would depreciate the value of the remainder of the land; and (5) under the terms of the petition in condemnation the city would have the right of ingress and egress over the entire remainder of the land, as distinguished from ingress and egress over the easement, thereby resulting in interference with the use of the remainder.

Jimmy Ross, a dairy farmer, testified that in his opinion the average per acre value of the remainder was $1,200 to $1,300 before the taking and $1,000 to $1,100 per average acre after the taking. His reason for the diminished value was based on the fact that the city would have a right to ingress and egress over the entire remainder, and also on the fact that the city would have a right to place any number of sewer lines of any size on the twenty-foot strip above the surface, thereby resulting in inconvenience in the use of the remainder.

Jack Gooding, another dairy farmer, testified that the before and after value of the remainder was $1,200 and $900 per average acre, respectively. The only reasons he gave for the diminished value after the taking was the fact that the construction of the sewer line would decrease the value of the improvements and that the city's right of ingress and egress over the entire remainder would interfere with the use of the land.

Bill Tate, who owned six dairy farms and leased two more, testified that the average value per acre before the taking was $1,200 and that the average per acre value after the taking was $1,000. He was not asked by either party as to "why" or "how" he reached his conclusion.

After the landowner had rested, the city called A. D. Nance, a real estate broker, who testified that in his opinion there was no diminution in the value of the remainder because the easement was situated on the least desirable part of the land.

At this point, the city requested, and was granted, the right to amend its pleadings. By its amended pleadings, the city relinquished its request for the fee title, the right to lay a sewer line or lines above the ground, the right to lay other sewer lines in the future, the right to keep the subsurface of the easement clear at all times, and the right of ingress and egress over the remaining land. In substance the amended petition sought judgment only for a twenty-foot easement for the purpose of constructing an underground sewer line, together with ingress and egress thereon. Counsel for the city was allowed to read and explain to the jury the contents and the purposes of the amended petition.

Thereafter, the city called another value witness who testified that he was of the opinion that the average per acre value before and after the taking of the easement remained the same and that no diminution in value resulted to the remainder.

The city's contention that there is no evidence to support the jury's finding is based on the assumption that the jury took into consideration all of the elements of damages testified to by the witnesses as if they were a direct result of all the rights and privileges claimed by the city in its original statement in condemnation. It is argued that the verdict shows that the jury awarded the landowner the amount of damages testified to by the witnesses, just as if the city had not relinquished any of its rights. The city argues that, since it relinquished all of its rights except for an easement to lay one sewer line below the surface of the ground, the damages would necessarily be much less than the $200 per acre estimated by the witnesses who based their testimony on the easement rights originally claimed by the city. The city therefore argues that since the landowner did not recall his witnesses and offer any proof as to what the damages were in light of the city's reduced claim, nor offer other witnesses to testify as to the amount of damages based on the amount of the reduced claim, the proof does not constitute any evidence of what damages resulted to the remainder based solely on its reduced claim. The city contends that to allow recovery on the basis of the value estimated by the witnesses would be to ignore the fact that it relinquished some of its rights, and would allow the landowner a recovery for easement rights which had been abandoned. We are not in accord with this proposition.

■ All of the landowner's witnesses testified that the taking of the twenty-foot strip and the construction of the sewer line would diminish the market value of the remaining property. Three of the witnesses were of the opinion that the market value of the remainder would be diminished

in the amount of $200 per acre. Jack Gooding testified, however, that in his opinion the damages resulting to the remainder would amount to the sum of $300 per acre. Contrary to his opinion, the jury found, in effect, that the market value of the remainder would be diminished by the sum of $200 per acre. Under his testimony, the jury would have been authorized to find that the difference in the before and after value of the remainder was $300 per acre. Conceivably, the jury could have concluded that the market value of the remainder was diminished by the sum of $300 per acre, but, in view of the fact that the city had relinquished some of its rights, the remainder would suffer damages only to the extent of $200 per acre. In other words, the jury could have concluded that the city was entitled to a reduction in the amount of $100 per acre due to the fact that the city had relinquished some of its easement rights. Thus, when viewed in a light most favorable to the jury's findings and the judgment based thereon, we are of the opinion that there is evidence of probative force to support the judgment. The city's "no evidence" point of error is overruled.

Even though the court was not requested to limit or qualify any of the testimony of the landowner's witnesses in the charge to the jury, the court nevertheless properly charged the jury on the rights of the parties and the purposes of the easement as follows:

"In connection with the following special issues, you are instructed that the easement and related rights acquired by condemnation by the City of Sulphur Springs in the easement in question and the specific purposes for which they are to be used are the right to construct, alter, maintain, operate and replace at any time, now or in the future, a sewer line in and under the said easement, together with the free right of ingress and egress over and across such easement for any of the purposes aforesaid, and the further right to keep the surface of said easement clear at all times of all improvements, trees, shrubs, or other growth of any kind and of all other obstructions or hindrances in any way affecting the City of Sulphur Springs' rights hereunder."

■ Had the city desired fully to protect itself against the possibility that the jury might have become confused as to what testimony they could or could not consider, the city would have been authorized to request the court to instruct the jury not to consider any testimony or assess any damages for any of the easement rights which it had abandoned and relinquished. *City of Beaumont v. Marks,* 443 S.W.2d 253, 256 (Tex.1969); *State v. Carpenter,* 126 Tex. 604, 89 S.W.2d 194, 201 (1936). In addition to this, the city could have requested permission to recall the landowner's witnesses and re-examine them in light of its amended petition wherein it relinquished some of its rights. The city adopted neither course, and thus waived its right to complain of the testimony relating to items of damages given before it filed its amended petition.

After reviewing the record as a whole and after weighing and balancing all of the evidence, we are of the opinion that this is not a situation where it could be said that the verdict or judgment is against the overwhelming weight and preponderance of the evidence or that the evidence is insufficient to support the judgment. Accordingly, the city's two "insufficiency" points are overruled.

■ Finally, the city requests a remittitur. Nowhere has the city challenged by a point of error that the judgment is excessive. The request for remittitur is found only under the conclusion and prayer in the brief. Points of error constitute an indispensable part of a brief on appeal and an alleged error not contained in any point of error should not be considered. *Cruse v. Daniels,* 293 S.W.2d 616 (Tex.Civ.App.—Amarillo 1956, writ ref'd n. r. e.); *Wagley v. Fambrough,* 163 S.W.2d 1072 (Tex.Civ.App.—Eastland 1942), affirmed, 140 Tex. 577, 169 S.W.2d 478 (1943); Rule 418, Tex. R.Civ.P. In any event the city will be held to have waived the matter since the matter of remittitur was neither briefed nor argued. *Bifano v. Econo Builders, Inc.,* 401 S.W.2d 670 (Tex.Civ.App.—Dallas 1966,

writ ref'd n. r. e.); *St. Paul Mercury Ins. Co. v. Sugarland Industries, Inc.,* 406 S.W.2d 778 (Tex.Civ.App.—Eastland 1966, writ ref'd n. r. e.).

The judgment is affirmed.